ROBBINS CORDAGE CO. *versus* HENRIETTA B. BREWER, *Adm'x.*

An appeal from the decision of commissioners to examine claims against an insolvent estate, may be made within twenty days after the acceptance of their report by the Judge of Probate.

An action cannot be maintained to recover interest after payment of the principal, unless there had been an express contract to pay interest.

A receipt taken upon the settlement of an account is open to the proof and correction of errors, but the specific errors, distinct and unequivocal, must be shown.

ON REPORT. ASSUMPSIT for money had and received, as provided by statute, upon an account against the estate of John M. M. Brewer, presented to the commissioners of insolvency on said estate, and by them rejected.

The defendant, in her specifications of defence, denied that the appeal from the report of the commissioners had been taken in season, and relied upon a settlement of the account by Brewer in his lifetime, alleging that the plaintiffs' claim was for interest only, and, therefore, this action could not be maintained.

The evidence in relation to the appeal is stated in the opinion.

The only other evidence was the testimony of *F. A. Pike,* which was, that "in May, 1857, I was called upon by Mr. Boynton, of the firm of N. Boynton & Co., who acted for the Robbins Cordage Company, and I went to Robbinston with him to see John M. M. Brewer to get security from him for the debt in favor of the Cordage Company.

"After a good deal of conversation, an agreement was finally made as to the kind of security and Mr. Brewer gave his note for $2248,91, and thereupon Mr. Boynton receipted and settled the account." Before this was done they looked over the account and compared it with Mr. Brewer's books and talked about the interest on the account.

It was arranged between them that "Mr. Boynton was to go home, have an account made and sent down, and if it disagreed with the account settled it was to be rectified. The only difference, so far as I recollect, was about the interest. The account then settled was in gross. Mr. Boynton then went home and the next week sent to me the account annexed to the writ in this case. I showed it to Brewer within a few days, and he said he thought there would not be so much due, but he would make out a statement and give it to me. He made a statement and gave it to me. I told him I would figure it up and see if there was any considerable disagreement. I did figure up this statement, and made it within a few dollars of the account sent me from Boston. I told him the results of my castings. He said he would take the statement and examine it himself, and he took it. After his death it was found among his papers. I have compared the account annexed to the writ with the account upon Mr. Brewer's ledger and they agree, and I think there is no material difference between this and Mr. Brewer's statement. The only objection Mr. Brewer made to this account was, that he thought there would not be so much interest."

*On cross-examination.* — "The receipted bill was given at the time of the interview between Brewer and Boynton. I cannot recollect all the conversation at that time, but, my impression is, that we looked at the books, and that there was apparently some discrepancy between the amounts of the interest charged. Mr Boynton said he knew nothing about the accounts; that he had had nothing to do with the management of the concern until lately, and he would go home and have a full statement made and sent down. I don't recollect any further conversation upon that point. The main part of the

conversation was as to the security. He was anxious to get security. The note given was secured by mortgage.

" Neither time that I talked with Mr. Brewer, did he claim that the account settled was a final settlement of accounts.

" Mr. Brewer was in feeble health at the time. He died about a year afterward. He did not say any thing about whether the account settled was or was not a final settlement. There had been quite large transactions between the parties, extending for several years back."

*Pike*, for plaintiffs.

*Bradbury*, for defendant.

The opinion of the Court was drawn up by

KENT, J.— The first question raised is whether the appeal was taken in season, from the decision of the commissioners appointed by the Judge of Probate. The report was dated April 4, 1859, and was approved by the Judge of Probate, at a Court held May 3d, and this appeal was taken May 6th. The commission, under which the commissioners acted, expired by limitation on April 4th, the day the report bears date. There is some question made as to the exact day that the report was left at the probate office, with the register. There seems to be but little, if any, reason to doubt that it was filed with the register more than twenty days after its date. But this fact is not important, in the view we take of the case.

The defendant contends that the appeal must be taken within twenty days after it is made and signed by the commissioners. The plaintiff contends that the matter is open to an appeal, for twenty days after the action of the Judge of Probate, accepting the report.

The provisions of the statute on this subject are found in c. 66, R. S. By § 11, " a party dissatisfied with a decision of the commissioners, may appeal therefrom within twenty days after their report is made." By § 8 the commissioners are required " to make their report to the Judge," and the Judge

"may recommit it for the correction of any error appearing to him to exist."

It seems very clear that the time of limitation, (twenty days,) does not begin to run until the report is signed and *made to the Judge.* An appeal, before the report is filed in the probate office, would be too soon, and therefore inoperative. *Pattee* v. *Low,* 36 Maine, 141; *Ellsworth* v. *Thayer,* 4 Pick., 122.

The notice of appeal is to be given at the probate office, and not to the commissioners. Does it necessarily begin to run at the time of filing in the office? Without deciding that an appeal entered within twenty days after the report is in the office, and before action on it by the Judge, would be inoperative, as being too soon, if the report was afterwards accepted, we are of opinion that a party is not compelled to enter an appeal until the report has been "made to the Judge," and by him has been accepted. It would be anomalous to compel a party to appeal from any thing but the final action of the Court or tribunal, on the subject matter. There is no statute provision for an appeal from the commissioners, as a court. The appeal is from their decision after it is made to the Court of Probate. The statute evidently contemplates that a party aggrieved, may have a hearing before the Judge of Probate, before an appeal, and may obtain a recommitment of the report to correct the errors he complains of in the disallowance of his claim. This right he might lose, on the construction contended for, if there was no Probate Court held within twenty days after the report was handed in to the register. The Judge might order a recommitment after sundry appeals had been taken.

We think a party may safely wait until the final action of the Probate Court. This is the view taken of a similar statute of Massachusetts, in *Goff* v. *Kellogg,* 18 Pick., 256, where it is held that "the proper evidence of the rejection of the claim, is the return of the report to the probate office and the acceptance thereof by the Probate Court." To the same point is *Hodges* v. *Thacher,* 23 Verm., 455.

2. The case, upon its merits, is referred to the decision of the Court on the report of facts and evidence. It appears that the plaintiffs had dealings for a long time with the intestate; that there had been no settlement until May 20, 1857, when the Cordage company presented a bill, and the balance, as therein stated, was paid by note on six months, and the bill receipted as paid by that note. The plaintiffs now allege that there was an error in the settlement, and seek to have the receipt and discharge set aside on that ground. There is no doubt that a receipt is open to correction and to proof of errors, but when a party makes out his own bill, as from his books, and, after negotiation, takes a note or money in payment, and receipts the bill as paid, the defendant may safely rest on that discharge, until the plaintiffs clearly establish fraud or mutual mistake, or some fact that overcomes the *prima facie* defence.

The defendant insists that the only claim now set up is for interest, which plaintiffs say was not cast or allowed in the settlement. It has been decided that an action cannot be maintained to recover interest after payment of the principal, unless there was an express contract to pay interest. *Howe* v. *Bradley,* 19 Maine, 35; *Johnston* v. *Braman,* 5 Johns., 268; *Fake* v. *Eddy,* 15 Wend., 76.

The amount claimed as due at the time of settlement was paid by the note. Have the plaintiffs shown clearly that the sum then paid did not include all the items of charge, independent of the claim for interest? Assuming that there was no final settlement, and that the negotiation at the time of giving the note, as testified to by Mr. Pike, left the matter open for future correction in case of error, has that error been shown satisfactorily? We think that the settlement ought to stand until some specific error, distinct and unequivocal, is shown. Mr. Pike says that the only difference was about the interest. He also says that the intestate made out a statement from his books, and he compared this statement with the plaintiffs' bill annexed to the writ in this case, and they agree. He speaks of some difference in opinion about interest. If there is any

difference in amount of items of charge in the two accounts, we have no evidence what it is, or whether the error would increase or diminish the amount of the charges and items, or the sum named in the note given on settlement.

The conversation and admissions of Brewer, stated by Mr. Pike, do not amount to a binding acknowledgment of the correctness of any bill. They, at most, leave the matter open for proof of actual errors, in his favor. But the plaintiffs have failed to show to our satisfaction wherein, and in what particulars, there was an error in items of charge or credit, independent of the charges for interest.

It does not appear that there was any agreement or promise to pay interest, or at what time it should commence, or that any demand had been made on the intestate. If the whole of the principal debt had been paid, then, according to the authorities before cited, no action can be maintained for interest as a mere incident of the debt, no express agreement to pay interest being proved. Indeed, there does not seem to be sufficient evidence, as the case stands, before us, to authorize the plaintiffs to claim interest on their account, if there had been no settlement. We have no proof of any agreement to pay it, of any demand for payment, or any usage to charge it, or of the term of credit, if any was given.

*Plaintiffs nonsuit.*

TENNEY, C. J., RICE, APPLETON, CUTTING and MAY, JJ., concurred.