### THOMAS v. CINCINNATI, N. O. & T. P. RY. CO.

(Circuit Court, S. D. Ohio, W. D. July 1, 1897.)

#### No. 4,598.

CONTRACT—ACTS OF PARTIES—CONSTRUCTION.

Where the representatives of a city which owns and leases a railroad have for 15 years accepted the quarterly installments of rent reserved after maturity, and without interest, the lessees always claiming the right to pay at any time within 90 days without being liable for interest, the parties have, by their acts thereunder, placed a practical construction on the contract by which both are bound; the right to interest under its terms being open to doubt.

On the Intervening Petition of Samuel M. Felton, Receiver. In the matter of payment of interest upon the rent due to the city of Cincinnati.

The city of Cincinnati is the owner of a railway running from Cincinnati to Chattanooga. The railway is held for the city by the trustees of the Cincinnati Southern Railway. On the 12th of October, 1881, the trustees of the railway, by virtue of the power conferred by the general assembly of the state of Ohio, leased the road to the Cincinnati, New Orleans & Texas Pacific Railway Company for a period of 25 years at an annual rental expressed in the lease as follows:

"The annual rental hereby reserved, which the party of the second part covenants and agrees for itself, its representatives and assigns, in lawful money of the United States of America, at the treasury of the city of Cincinnati, Ohio,

payable quarterly on the 12th days of January, April, July, and October in each and every year of said term hereby granted, shall be the sums following, to wit: During the first period of five years of the term hereby granted, the annual rental of eight hundred thousand dollars ($800,000); during the second period of five years of the term hereby granted, the annual rental of nine hundred thousand dollars ($900,000); during the third period of five years of the term hereby granted, the annual rental of one million dollars ($1,000,000); during the fourth period of five years of the term hereby granted the annual rental of one million and ninety thousand dollars ($1,090,000); during the fifth period of five years of the term hereby granted, the annual rental of one million two hundred and fifty thousand dollars ($1,250,000)."

The question which arises on this intervening petition, to which the trustees have been made parties defendant and have appeared, is whether the delay in the payment of any of the quarterly installments due under the lease for 90 days or less imposes upon the lessee the obligation to pay interest upon such installment. Clause 13 of the lease is as follows:

"It is further covenanted and agreed by and between the parties hereto that in case the party of the second part shall, at any time or times hereafter, during the term herein granted, fail to pay the rent herein reserved or provided to be paid by the said party of the second part, or any part of such rent, when the same shall become payable as herein specified, or shall fail to pay the rates, taxes, assessments, or other charges herein provided to be paid by the party of the second part, or shall fail or omit to keep and perform any of the covenants and agreements herein contained by the said party of the second part to be kept and performed, and shall continue in default in respect to the performance of such covenant and agreement for the period of ninety days, then, and in either, any, and every such case, it shall be lawful for the said party of the first part, without having made any demand for such rent, or the performance of such covenant, to re-enter into and upon said railway and premises hereby leased, and any and every part thereof, and remove all persons therefrom, and from thenceforth the said leased railway and premises, with the appurtenances thereof, and all additions and improvements which shall or may have been made to the same, to have, hold, possess, and enjoy, as in the first and former estate of the said lessor therein; and upon such re-entry all the estate, right, title, interest, possession, claim, and demand whatsoever of the said party of the second part in and to the said leased railway and premises, or any part thereof, shall wholly and absolutely cease, determine, and become void; anything herein contained to the contrary in any wise notwithstanding. In case of such re-entry the rent reserved herein from the time of the last preceding payment of any installment thereof up to the time of such re-entry shall be apportioned, and such portion thereof as would have been payable in respect to the intervening time, if the whole period in respect to which such installments were payable had elapsed, shall be deemed and taken to be due and payable, and shall be paid by the said party of the second part. Such re-entry shall not waive or prejudice any claim or right of said party of the first part to or for damages against the party of the second part on account of the nonperformance or breach of any of the terms of this lease, and all such claims and rights are expressly preserved to the said party of the first part. And a right and power of re-entry shall arise on each and every forfeiture, breach, or default as herein provided, notwithstanding the waiver of any prior right of re-entry or forfeiture under the foregoing provisions."

No interest at any time since 1881 until the present day has ever been paid by the lessee company or the receiver to the city of Cincinnati. The amounts due under the lease, the dates when paid, the days overdue, and the amount of interest at 6 per cent. which ought to have been collected if due, appear in the following table:

Statement of Rents Paid to the City of Cincinnati, Showing Dates Due, Dates Paid, and Interest at 6% Per Annum on Overdue Amounts, October 12th, 1881—January 12th, 1897.

| Quarter Ending | Amount. | Due. | Date Paid. | Days Overdue. | Interest. |
|---|---|---|---|---|---|
| Jan. 12, 1882 | $200,000 00 | Jan. 12/82 | Jan. 12/82 | — | |
| Apl. 12, " | 200,000 00 | Apl. 12/82 | Apl. 12/82 | — | |
| July 12, " | 200,000 00 | July 12/82 | July 13/82 | 1 | 32 88 |
| Oct. 12, " | 200,000 00 | Oct. 12/82 | Oct. 12/82 | — | |
| Jan. 12, 1883 | 200,000 00 | Jan. 12/83 | Jan. 12/83 | — | |
| Apl. 12, " | 200,000 00 | Apl. 12/83 | Apl. 12/83 | — | |
| July 12, 1883 | 200,000 00 | July 12/83 | July 13/83 | 1 | 32 88 |
| Oct. 12, " | 200,000 00 | Oct. 12/83 | Oct. 15/83 | 3 | 98 64 |
| Jan. 12, 1884 | 200,000 00 | Jan. 12/84 | Jan. 21/84 | 9 | 295 92 |
| Apl. 12, " | 200,000 00 | Apl. 12/84 | Apl. 16/84 | 4 | 131 52 |
| July 12, " | 200,000 00 | July 12/84 | Sept. 17/84 | 67 | 2,202 96 |
| Oct. 12, " | 200,000 00 | Oct. 12/84 | Jan. 9/85 | 89 | 2,926 32 |
| Jan. 12, 1885 | 200,000 00 | Jan. 12/85 | Apl. 10/85 | 88 | 2,893 44 |
| Apl. 12, " | 200,000 00 | Apl. 12/85 | July 7/85 | 86 | 2,827 63 |
| July 12, " | 200,000 00 | July 12/85 | Oct. 8/85 | 88 | 2,893 44 |
| Oct. 12, " | 200,000 00 | Oct. 12/85 | Jan. 9/86 | 89 | 2,926 32 |
| Jan. 12, 1886 | 200,000 00 | Jan. 12/85 | Apl. 9/86 | 87 | 2,860 56 |
| Apl. 12, " | 200,000 00 | Apl. 12/86 | July 8/86 | 87 | 2,860 56 |
| July 12, " | 200,000 00 | July 12/86 | Oct. 9/86 | 89 | 2,926 32 |
| Oct. 12, " | 200,000 00 | Oct. 12/86 | Dec. 31/86 | 80 | 2,630 40 |
| Jan. 12, 1887 | 225,000 00 | Jan. 12/87 | Mar. 3/87 | 50 | 1,849 50 |
| Apl. 12, 1887 | 225,000 00 | Apl. 12/87 | June 11/87 | 60 | 2,219 40 |
| July 12, " | 225,000 00 | July 12/87 | Sept. 5/87 | 55 | 2,034 45 |
| Oct. 12, " | 225,000 00 | Oct. 12/87 | Nov. 7/87 | 26 | 961 74 |
| Jan. 12, 1888 | 225,000 00 | Jan. 12/88 | Jan. 12/88 | — | |
| Apl. 12, 1888 | 225,000 00 | Apl. 12/88 | May 31/88 | 49 | 1,812 51 |
| July 12, " | 225,000 00 | July 12/88 | Sept. 12/88 | 62 | 2,293 38 |
| Oct. 12, " | 225,000 00 | Oct. 12/88 | Nov. 28/88 | 47 | 1,738 53 |
| Jan. 12, 1889 | 225,000 00 | Jan. 12/89 | Mar. 29/89 | 76 | 2,811 24 |
| Apl. 12, " | 225,000 00 | Apl. 12/89 | June 14/89 | 63 | 2,330 37 |
| July 12, " | 225,000 00 | July 12/89 | Sept. 26/89 | 76 | 2,811 24 |
| Oct. 12, " | 225,000 00 | Oct. 12/89 | Nov. 28/89 | 48 | 1,775 52 |
| Jan. 12, 1890 | 225,000 00 | Jan. 12/90 | Jan. 11/90 | — | |
| Apl. 12, " | 225,000 00 | Apl. 12/90 | May 27/90 | 45 | 1,664 55 |
| July 12, " | 225,000 00 | July 12/90 | July 23/90 | 11 | 406 89 |
| Oct. 12, " | 225,000 00 | Oct. 12/90 | Oct. 12/90 | — | |
| Jan. 12, 1891 | 225,000 00 | Jan. 12/91 | Feb. 16/91 | 35 | 1,294 65 |
| Apl. 12, " | 225,000 00 | Apl. 12/91 | June 22/91 | 71 | 2,626 29 |
| July 12, " | 225,000 00 | July 12/91 | Sept. 15/91 | 65 | 2,404 35 |
| Oct. 12, " | 225,000 00 | Oct. 12/91 | Nov. 9/91 | 28 | 1,035 72 |
| Jan. 12, 1892 | 250,000 00 | Jan. 12/92 | Mar. 18/92 | 66 | 2,712 60 |
| Apl. 12, " | 250,000 00 | Apl. 12/92 | May 31/92 | 49 | 2,013 90 |
| July 12, " | 250,000 00 | July 12/92 | Sept. 12/92 | 62 | 2,548 20 |
| Oct. 12, " | 250,000 00 | Oct. 12/92 | Nov. 22/92 | 41 | 1,685 10 |
| Jan. 12, 1893 | 250,000 00 | Jan. 12/93 | Mar. 30/93 | 77 | 3,164 70 |
| Apl. 12, " | 125,000 00 ⎫ | Apl. 12/93 | May 29/93 | 47 | 965 85 |
| Apl. 12, " | 125,000 00 ⎬ | Apl. 12/93 | July 7/93 | 86 | 1,767 30 |
| July 12, " | 125,000 00 ⎫ | July 12/93 | Sept. 16/93 | 66 | 1,356 30 |
| July 12, " | 125,000 00 ⎬ | July 12/93 | Oct. 10/93 | 90 | 1,849 50 |
| Oct. 12, " | 125,000 00 ⎫ | Oct. 12/93 | Nov. 29/93 | 48 | 986 40 |
| Oct. 12, " | 125,000 00 ⎬ | Oct. 12/93 | Dec. 30/93 | 79 | 1,623 45 |
| Jan. 12, 1894 | 125,000 00 ⎫ | Jan. 12/94 | Mar. 12/94 | 59 | 1,212 45 |
| Jan. 12, " | 125,000 00 ⎬ | Jan. 12/94 | Apl. 7/94 | 85 | 1,746 75 |
| Apl. 12, " | 50,000 00 ⎫ | Apl. 12/94 | June 4/94 | 53 | 435 66 |
| Apl. 12, " | 200,000 00 ⎬ | Apl. 12/94 | July 11/94 | 90 | 2,959 20 |
| July 12, " | 250,000 00 | July 12/94 | Oct. 9/94 | 89 | 3,657 90 |

81 F.—58

| Quarter Ending | | | Amount. | Due. | | Date Paid. | | Days Overdue. | Interest. |
|---|---|---|---|---|---|---|---|---|---|
| Oct. | 12, | 1894 | 125,000 00 ) | Oct. | 12/94 | Nov. | 28/94 | 47 | 965 85 |
| Oct. | 12, | " | 125,000 00 ) | Oct. | 12/94 | Dec. | 22/94 | 71 | 1,459 05 |
| Jan. | 12, | 1895 | 250,000 00 | Jan. | 12/95 | Apl. | 4/95 | 82 | 3,370 20 |
| Apl. | 12, | " | 125,000 00 ) | Apl. | 12/95 | July | 1/95 | 80 | 1,644 00 |
| Apl. | 12, | " | 125,000 00 ) | Apl. | 12/95 | July | 9/95 | 88 | 1,808 40 |
| July | 12, | " | 250,000 00 | July | 12/95 | Sept. | 23/95 | 73 | 3,000 30 |
| Oct. | 12, | " | 250,000 00 | Oct. | 12/95 | Dec. | 14/95 | 63 | 2,589 30 |
| Jan. | 12, | 1896 | 125,000 00 ) | Jan. | 12/96 | Mar. | 30/96 | 78 | 1,602 90 |
| Jan. | 12, | " | 125,000 00 ) | Jan. | 12/96 | Apl. | 9/96 | 88 | 1,808 40 |
| Apl. | 12, | " | 125,000 00 ) | Apl. | 12/96 | June | 30/96 | 79 | 1,623 45 |
| Apl. | 12, | " | 125,000 00 ) | Apl. | 12/96 | July | 8/96 | 87 | 1,787 85 |
| July | 12, | " | 125,000 00 ) | July | 12/96 | Oct. | 5/96 | 85 | 1,746 75 |
| July | 12, | " | 125,000 00 ) | July | 12/96 | Oct. | 10/96 | 90 | 1,849 50 |
| Oct. | 12, | " | 125,000 00 ) | Oct. | 12/96 | Nov. | 12/96 | 31 | 637 05 |
| Oct. | 12, | " | 125,000 00 ) | Oct. | 12/96 | Dec. | 19/96 | 68 | 1,397 40 |
| Jan. | 12, | 1897 | 272,500 00 | Jan. | 12/97 | Mar. | 24/97 | 71 | 3,180 09 |

Total ............................................... $121,765 97

The payments into the city treasury were made upon certificates of the board of trustees of the city of Cincinnati, as follows:

Office of Board of Trustees of Cincinnati Southern Railway.

Cincinnati, ——, 18—.

—— ——, Esqr., City Treasurer,

—— ——,

Cincinnati, Ohio.

This is to certify that there is due to the trustees of the Cincinnati Southern Railway from the Cincinnati, New Orleans and Texas Pacific Railway Company the sum of —— ($——) dollars, being the quarterly installment of rent due for the quarter ending —— 12th, 18—, under the lease of said railway to said company. You are hereby authorized to receive the said sum, to be kept and reserved for the payment of interest on, and provide a sinking fund for, the final redemption of the bonds issued under and by virtue of the act of the general assembly of Ohio, passed May 4th, 1869, entitled "An act relating to cities of the first class having a population exceeding one hundred and fifty thousand inhabitants."

By order of the board. —— ——, President.

Office of the City Treasurer of the City of Cincinnati.

Cincinnati, ——, 18—.

Received of the Cincinnati, New Orleans and Texas Pacific Railway Company the sum of —— dollars, for the purpose stated in the above certificate.

—— ——, City Treasurer.

$——.

The certificate never stated anything more than the exact installment of rent, and never included interest. The certificate was drawn upon the day when the payment was made, but was usually dated back to the day upon which the installment under the lease was due. The quarter rent payable on January 12, 1884, was not paid until January 21, 1884, the lessee company making the claim that whereas, under and by virtue of clause 13, no forfeiture could arise until the failure to pay the rent had continued for 90 days, this gave them an option at any time within 90 days to pay the rent without interest; that on the 1st day of February, 1884, the city council passed the following resolution:

"Resolved, that the city solicitor be, and is hereby, directed to inquire into and report to this board at the next regular meeting why the lessees of the Cincinnati Railway do not pay into the city treasury the interest on the last quarterly installment, ending January 12th, 1884."

## To this the city solicitor answered as follows:

February —, 1884.

To the Trustees of the Cincinnati Southern Railway—Gentlemen: At a meeting of the board of councilmen of Cincinnati held February 1st, 1884, the following resolution was adopted: "Resolved, that the city solicitor be, and he is hereby, directed to inquire into and report to this board at the next regular meeting why the lessees of the Cincinnati Southern R. R. do not pay to the city treasurer the interest on the last quarterly installment, ending January 12th, 1884." Under the lease to the Cincinnati, New Orleans and Texas Pacific Railway Company, quarterly installments of rent of $200,000 each are payable on the 12th day of January, April, July, and October in each and every year for the first period of five years. The installment due January 12th, ult., I am informed by the city treasurer, was not paid until January 21st,—a default of nine days. No interest has been paid for such time. I call the attention of the trustees to the matter for such information as the resolution contemplates, and for such action as they may deem right under the law.

Very respectfully,                                    J. Dawson, City Solicitor.

On February 2, 1884, the board of sinking fund trustees, a board which is charged under the law with the duty of providing for the payment of the interest on the bonded debt of the city, including the Southern Railway debt, and its final redemption, and the consent of which was necessary to the making of the lease of the railroad herein, passed the following resolution:

"The president offered the following, which was unanimously adopted:

" 'The clerk is directed to enter the following memorandum on the minutes, and to send copies of it to the president of the lessee company:

" 'Memorandum.

" 'The quarterly installment of $200,000 rent on the lease of the Southern Railroad from the lessee company which is required to be entered to the credit of this trust, and was due on January 12th of the present year, was not paid into the treasury until the 21st of the same month after 3 o'clock p. m. The delay was accompanied by an incorrect claim or suggestion of right on the part of the lessee company to withhold it for ninety days. This board is not charged with the duty or responsibility of collecting the rent, but is charged with the duty of expecting its payment when due, and of taking such action for the use or disposition of the money as circumstances may require. The delay connected with the incorrect claim or suggestion of right is regarded by this board as an unsatisfactory method of dealing with the subject, which cannot fail to be inconvenient, and, if continued, to be injurious to the trust.' "

The board of trustees of the Cincinnati Southern Railway seem to have made no reply to the inquiries directed to this subject by either the council or the sinking fund trustees. On January 5, 1885, September 13, 1888, November 2, 1888, and on February 3, 1891, the board of sinking fund trustees passed similar resolutions, and in one instance recited the amount of interest due on delayed payments to be $40,000. Since 1891 the board of sinking fund trustees has taken no action of any kind. On March 18, 1893, the petitioner Felton was appointed receiver by this court, and took possession of the leasehold premises. Soon after his appointment, the receiver applied to the court for authority to make partial payments, and it was granted. Thereafter two kinds of certificates and receipts

were issued by the board of Southern Railway Trustees,—one for partial payments of an installment on account, and the other for a payment of the remainder of the installment in full.    The certificate and receipt of the former kind were as follows:

Office of Board of Trustees Cincinnati Southern Railway.

Cincinnati, May 29, 1893.

Henry M. Ziegler, Esq., City Treasurer, Cincinnati, Ohio: This is to certify that there is due to the trustees of the Cincinnati Southern Railway from the Cincinnati, New Orleans and Texas Pacific Railway Co. the sum of ——, being the quarterly installment of rent due for the quarter ending ——, under the lease of said railway to said company.    Under an order of the circuit court of the United States in and for the Southern district of Ohio, Western division, made in the case of Samuel Thomas against the Cincinnati, New Orleans and Texas Pacific Railway Company, now pending therein, you are hereby authorized to receive from Samuel M. Felton, the receiver appointed by said court, the sum of —— on account of said quarterly installment, to be kept and reserved for the payment of interest on and providing a sinking fund for the final redemption of the bonds issued under and by virtue of the act of the general assembly of Ohio passed May 4, 1869, entitled "An act relating to cities of the first class, having a population exceeding one hundred and fifty thousand inhabitants."    The receipt of said sum on account is not to be held or construed as a waiver of any lien or right of forfeiture reserved in said lease which the said trustees may have.

By order of the board.                    E. A. Ferguson, President.

Office of the Treasurer of City of Cincinnati.

Cincinnati, May 29, 1893.

Received of the Cincinnati, New Orleans and Texas Pacific Railway Company the sum of —— dollars for the purpose and upon the terms stated in the above certificate.                    Fred. Raine, Bk.,

For City Treasurer.

The certificate and receipt of the latter kind—that is, for the remainder of the installment—were as follows:

Office of the Board of Trustees Cincinnati Southern Railway.

Cincinnati, ——, ——.

Henry M. Ziegler, Esq., City Treasurer, Cincinnati, Ohio. This is to certify that there is due to the trustees of the Cincinnati Southern Railway from the Cincinnati, New Orleans and Texas Pacific Railway Co. the sum of ——, being the balance of the quarterly installment for rent due for the quarter ending April 12, 1893, under the lease of said railway to said company.    You are hereby authorized to receive the said sum, to be kept and reserved for the payment of interest on and providing a sinking fund for the final redemption of the bonds issued under and by virtue of the act of the general assembly of Ohio, passed May 4, 1869, entitled "An act relating to cities of the first class having a population exceeding one hundred and fifty thousand inhabitants."

By order of the board.                    E. A. Ferguson, President.

Office of the City Treasurer of the City of Cincinnati.

Cincinnati, July 7th, 1893.

Received of the Cincinnati, New Orleans and Texas Pacific Railway Company the sum of ——, for the purpose stated in the above certificate.

H. M. Ziegler, City Treasurer.

Since the receiver has operated the railroad, in no instance has the quarterly installment been paid in full at the time it was due under the lease.    Payments have been generally made on account, and the balance of the installment has been paid and receipted for

at or near the expiration of the period of 90 days after the time the rent became payable. This is shown by the table above given. Receipts on account have always been given for partial payments, and receipts for balance when the installment without interest has been paid. Never, until October 10, 1896, during the 15 years since the beginning of the lease, has the board of Southern Railway trustees made any claim that interest has been due on installments paid at any time within the 90-days period. Upon that date for the first time the claim was made by the board in a letter of its president to the receiver. Since that time the receiver has paid the installments of rent after they were due, without paying any interest thereon, having received the usual certificates and receipts. The question has now again arisen on the form of the certificate and receipt to be given for the balance of the installment due April 12, 1897, and which the receiver is ready to pay on or before July 12, 1897.

Harmon, Colston, Goldsmith & Hoodly, for receiver.
Fred Hertenstein, for city of Cincinnati.
W. T. Porter, E. A. Ferguson, and J. R. Layler, for trustees.

TAFT, Circuit Judge (after stating the facts as above). The question now made at the bar was mooted by the sinking fund trustees nearly 15 years ago. Since that time no installment of rent has been paid at the time fixed in the lease for payment, and yet no one on behalf of the city has ever until now attempted to exact from the lessee company or its receiver the payment of one cent of interest for the delay. Receipts have been given, which, in effect, were receipts in full, whenever the installment without interest has been tendered within the 90-days period, and, as if to emphasize the meaning of the receipts for the balance of the installment, the receipts for partial payments. sometimes made have contained an express reservation of the right to forfeit the lease for a failure to pay the balance due, while this was significantly omitted from the receipts for the balance of the installment. If interest was due upon the installments of rent thus delayed in their payment, it is very clear that the obligation arose, not by express agreement between the parties, but as damages for delay. An unbroken line of authorities establishes that, where interest is payable as damages, the reception of the principal without the interest after default is a conclusive waiver of the claim for interest. Cutter v. Mayor, etc., 92 N. Y. 166; Hamilton v. Van Rensselaer, 43 N. Y. 244; Society v. Wells, 68 Me. 572; Cordage Co. v. Brewer, 48 Me. 481; Canfield v. School Dist., 19 Conn. 529; King v. Phillips, 95 N. C. 245; Childs v. Insurance Co., 56 Vt. 609; Abbott v. Wilmot, 22 Vt. 437; Perley, Interest (1893) p. 140. It therefore follows that, even if the lessee company was bound to pay interest on delayed installments, the receipt of the principal without the interest was a waiver of the same. If interest was due, then the city has suffered a loss of $121,000 by the failure to exact interest, or to reserve a right to the same when the installments were received. If interest was due, it was the duty of the Southern Railway trustees to collect it, or to protect the city's

right to it. They did not do so. If interest was necessarily due, their failure to collect it was a dereliction of duty on their part, which it would seem might subject them to liability to the city on their official bonds. I cannot suppose that the trustees would deliberately contend for a construction of the lease which might involve this consequence, and I cannot, therefore, regard their action in demanding interest on deferred installments after 15 years of acquiescence in the payment of such deferred installments without interest as well considered. I should be loath to reach a conclusion in this case which might justify a claim of personal liability against them. I am very clear that no such personal liability exists. The trustees were the representatives of the city in the execution of its duty under the lease, and there was necessarily vested in them some discretion in determining how rigidly the lease should be construed in favor of the city and against the lessee company in all cases where any doubt existed. It was, of course, for the interest of the city to encourage the lessee to meet its liabilities under a somewhat burdensome lease by not insisting upon a too harsh construction of its terms. The course which the trustees took in construing the lease as not compelling the payment by the lessee of interest on delayed installments during the 90-days period was in the proper exercise of a discretion vested in them, and I cannot hold it to have been otherwise, even at their own instance. It is possible that, had the question arisen and been litigated within a year or two after the execution of the lease, the construction would have been that interest was due, after the dates fixed for payment in the contract of lease, upon delayed installments of rent (section 3181, Rev. St. Ohio), though it might have been argued with some force that, in the absence of an express provision for the payment of interest on the defaulted installment in the clause of re-entry in which the right to apportion the succeeding rent was expressly reserved, the tender of the installment in full without interest at any time during the 90 days succeeding the default would have prevented the right of re-entry and forfeiture from accruing. If so, it would seem that the only amount due during the 90 days, and until its expiration, would be the installment of rent without interest. It has in time past been made the subject of dispute whether interest does run on rent in arrears. At common law no distress was allowed for interest on rent. Lansing v. Rattoone, 6 Johns. 43; Dennison v. Lee, 6 Gill & J. 383. The theory of the courts first seemed to be that the rent itself was a kind of interest, and that the interest on rent in arrears would be of the nature of compound interest, and so not permissible. Perley, Interest, 129; Burnham v. Best, 10 B. Mon. 229; Cooke v. Wise, 3 Hen. & M. 463. The general rule now, however, is that interest does accrue on rent in arrears from the time it is payable in money. Williams v. Sherman, 7 Wend. 109; People v. Dudley, 58 N. Y. 323. In Dennison v. Lee, 6 Gill & J. 383, the lessor reserved a right of re-entry in a certain time after the default in the payment of rent, and the re-entry clause expressly stipulated for interest on the defaulted rent. Interest was allowed on the installment of rent due in that case, and it was intimated that it would have been allowed even though no such express provision had been in the clause of re-entry.

In some of the early cases with respect to interest on rent in arrears, it was said that the question of the recovery of interest was within the discretion of the court or jury to whom the issue of the amount of recovery was submitted. Graham v. Woodson, 2 Call, 249; Skipwith v. Clinch, Id. 253; Dow v. Adam's Adm'r, 5 Munf. 21. It seems to me sufficiently to appear from what has been said that the question of the liability of the lessee company to pay interest on the installment during the 90 days was in some doubt. It is well settled that, where the construction of a contract is doubtful, courts may use the actual construction put thereon by the conduct of the parties under the contract as a controlling circumstance to determine the construction which should be put upon the contract in enforcing the rights of the parties. Topliff v. Topliff, 122 U. S. 121, 7 Sup. Ct. 1057; Chicago v. Sheldon, 9 Wall. 50; St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 121; Jackson v. Perrine, 35 N. J. Law, 137; Stone v. Clark, 1 Metc. (Mass.) 378. Of course, if the lease here in suit expressly provided for the payment of interest on deferred installments, conduct of the parties could not change the certain meaning of such a provision; but, where the obligation to pay interest can arise only by implication or legal inference, it seems clear to me that the implication or inference can be successfully rebutted by the uniform and constant conduct of the parties under the lease wholly at variance with such a liability on the part of the lessee.

It has been suggested that the action of the trustees of the Southern Railway in acquiescing in the claim of the lessee company that no interest was due for defaults in the installments during the 90-days period cannot affect the question of the lessee's liability for interest, because the trustees had no right or power thus to bind the city to a particular construction. To this it may be said that the conduct of the trustees is not the only significant evidence of the acquiescence of the city of Cincinnati in the claim of the lessee company. The action of the sinking fund trustees in passing a resolution that the claim was unfounded, instead of showing that there was no acquiescence on the part of that branch of the city government, only emphasizes the acquiescence of that board in the act of the Southern Railway trustees. It was entirely within the power of the board of sinking fund trustees, and of the members thereof as citizens and taxpayers of the city, to institute litigation, through the city solicitor or otherwise, to compel the trustees of the Southern Railway to insist upon a different construction of the lease with reference to the payment of interest. They did not do so, but contented themselves with a resolution spread upon their minutes protesting against such a construction of the lease in order to avoid any official responsibility for it. They could not thus shift their responsibility as taxpayers and citizens and as a board charged with providing funds to meet the city's obligations in such a way as to prevent the city itself from being bound by the action of the trustees of the Southern Railway. It also clearly appears that the city council, the governing body of the city, was fully advised at the time of the construction that the trustees of the Southern Railway were putting upon the lease, and the city solicitor might have been called upon by that board to go into

court to compel the trustees of the railroad to enforce the payment of interest. He might have done so of his own motion. Any other taxpayer, advised, as all of his class must have been, of that which was being done on behalf of the city in the enforcement and construction of the lease, might have brought into litigation, and settled thereby, the question of the obligation of the lessee company to pay interest on delayed installments. No such action was taken. Municipal corporations, acting in their proprietary capacity, especially when engaged in business enterprises for profit, like that of owning and leasing a railroad, cannot, any more than private individuals, avoid inferences from their inaction and silence as to their acquiescence in and ratification of the acts and omissions of their agents after so long a period of time as 15 years, when the acts and omissions complained of have been constantly recurring four times a year, and have been well known to the public at large. I hold, therefore, that by the construction put upon this lease by the parties to it as shown by 15 years of operation thereunder there is no obligation upon the lessee company to pay interest upon installments of rent within the 90 days after said installments become due, and before the right of re-entry and forfeiture under the lease accrues, and that an order must be made requiring the trustees of the Cincinnati Railway to accept from the receiver in future the installments of rent due under the lease, and to receipt therefor in full of said installments if paid in full at any time within the period of 90 days from the day fixed for payment in said lease.