### No. 12,675.

RENE F. DELAHOUSSAYE VS. THE ADELINE SUGAR FACTORY COMPANY.
LIMITED.

If in the attempted performance of a commutative contract to transport sugar cane from the field to the factory and pay the purchase price for cane agreed upon, the cane becomes sour and unfit for use caused by a "freeze," to which the cane was exposed owing to deficient means of transportation, the purchaser was bound to furnish, he must bear the loss resulting from the freezing temperature.

APPEAL from the Twenty-fourth Judicial District Court for the Parish of St. Mary.   *Allen, J.*

*D. Caffery & Son* and *J. Sully Martel* for Plaintiff, Appellant.

*Philip H. Ments* and *Carroll & Carroll* for Defendant, Appellee.

Argued and submitted January 25, 1898.
Opinion handed down March 7, 1898.
Rehearing refused May 16, 1898.

The opinion of the court was delivered by

MILLER, J.   The plaintiff takes this appeal from the judgment against him denying damages for an alleged breach by defendants of their contract to purchase the crop of cane grown on plaintiff's plantation in 1894.

The contract stipulated the plaintiff was to deliver by rail fifteen hundred tons, of two thousand pounds each, of good, sound, unfrozen cane at defendants' factory, the delivery to begin October 22, at about twenty-two tons per day, if bad weather prevented, the deficiency to be made up in the week, the defendants to pay eighty cents for every cent prime, yellow clarified sugar sells for in the New Orleans market, and an additional dollar per ton for the bounty paid to defendants.

The testimony shows that the defendants received a large portion of plaintiff's crop under the contract, but while the delivery was in progress there came a "freeze" on the 25th December.   Defendants continued receiving up to the 12th January, when they declined

taking any more cane, on the ground it had soured by reason of the "freeze" and the character of the weather that followed. At that time there was left in the field ———— acres of cane, under the testimony equal to nine hundred and sixteen tons. The plaintiff's contention is, that the written contract as to delivery was changed and the defendants assumed the obligation to furnish the cars of the railroad requisite to carry the cane from Berard's switch, near, we infer, to plaintiff's plantation, to the factory; that if the freeze injured the cane the loss is due solely to defendants' failure to provide the required number of cars for the transportation from Berard's switch to the factory; that if not injured as he contends, defendants under their contract were bound to receive the cane, and on either view are bound to pay for the nine hundred and sixteen tons. The defendants' contention is their contract was not modified, and hence plaintiff shows no compliance; that defendants received all his cane not soured by the "freeze" and are not bound for any part of that for which payment is sought in this suit, because it was not the good, sound, unfrozen cane required by the contract.

The plaintiff's contention that the written contract was modified as to the mode of delivery, rests upon the testimony that prior to any delivery the defendants assumed to furnish the cars. The plaintiff and another testify that one of the defendants "took it on himself to do so," one of the witnesses going more into details, thus: "I say positively that the arrangement was that Mr. Sprague, one of the defendants' firm, would furnish the cars; is positive he said, the Adeline factory will furnish you six cars a day, and the witness on his cross-examination repeats that Mr. Sprague said: 'You will have the six cars a day." These statements, made to plaintiff, were elicited by the expression of his fear that the cars would not be furnished. It is urged on us that the statements of Mr. Sprague to which the witnesses testify, were in a roadside conversation, that there was no consideration to change a written contract as to delivery, thereby increasing the burden to the defendant, and it is sought to show that the statements referred only to cribbing the cars, which we understand to be furnishing the labels indicating the plantations to which the cars were to be sent and preparing the cars to receive the cane. Whether the statements were on the roadside, or any other place, their significance we think obvious, and on that significance plaintiff acted. It is impressive, too, that no explanation

or contradiction comes from Mr. Sprague. The cribbing, we gather from Mr. Oxnard's testimony, is done by the defendants after the cars are placed at their disposition by the railroad company, and is preliminary to sending the cars to the destinations indicated by the labels, we infer, the defendants furnish. The cribbing and forwarding the cars to the points where the cane is to be delivered for transportation to the factory, are closely connected. When cribbed the cars are put in charge of the railroad employees, but their destination, i. e., where to be carried to receive the cane, is determined by defendants. Substantially, we think the defendants controlled the sending of the cars, and the plaintiff had the right to depend on them for the transportion of his crop to the factory. If we pass from this view, sustained, we think, by Mr. Sprague's statements, there is, in our view, strong confirmation in the course of the business of the parties. Besides the plaintiff's crop, the defendants had agreed to purchase or receive the cane of others. It is in proof that cars cribbed by them were sent to other points on the railroad. At Berard's switch, cars were collected to receive cane there purchased from various parties. All this movement of cars, we gather from the record, was directed by defendants. It is no answer to say the cars belonged to the railroad company; they were put at the service of defendants. Again, when plaintiff became impatient because of the delay in transporting his cane, it was to the defendants he addressed his demands for cars. If they had nothing to do with supplying cars, their response would have been to that effect. On the contrary their answer accepted the duty implied by the call. When later he became alarmed for the preservation of his crop, defendants assured him they would save it. It is urged plaintiff also sought the railroad officials. It is impressive they told him they had nothing to do with the matter, if we read the testimony right. But whatever the calls on the railroad company, does not, in our opinion, detract from the import of his demands on the defendants as evincing their understanding, as well as his appreciation of the contract. It seems to us, too, that Mr. Oxnard's testimony, referring to defendants' relation to transportation, is corroborative of our conclusion on this branch of the case. He testifies: "When we had agreed to furnish the cars, we had agreed to crate a certain number which would be used for that switch, i. e., Berard's. Don't remember positively whether it was

eighteen, it might have been. Did not agree to any specific number per day; an estimate would be made as to how many would be crated; would crate that number and reserve them for that service.'' It seems to us this testimony carries but one significance as to the burden of transportation, and puts it on defendants. It is in evidence that the plaintiff was charged with the cost of the transportation, deducted by defendants in their payments to him for cane. That would seem to be an interpretation of the part of the contract as to delivery at the factory, that is, plaintiff was to bear the expense; but the intercourse with Mr. Sprague, the testimony of Mr. Oxnard and the course of business, leads us to the conviction the plaintiff had the right to depend on defendants for cars for transportation of his cane to the factory. We do not think, to avert the loss of the cane due to the failure to furnish cars, the defendants are now at liberty to invoke a construction different from that the testimony and their own conduct places on their obligation.

The defendants, however, insist that sufficient cars were placed at Berard's switch, and it was plaintiff's fault the cars were not in requisition to carry his cane before it was frozen. In this connection the statement is attributed to him, in effect, that he held his cane back to give the small planters from whom defendants had purchased a chance, and it is insisted he had an interested motive in not shipping his cane. The testimony of the plaintiff is he made no such statement with reference to his crop, the subject of this controversy. We do not find the contention of defendant supported. On the issue of sufficient transportation the current of the testimony is that some days during the period that should have been utilized for the transportation, i. e., before the cane was frozen, no cars whatever were supplied. On other days cars came, but not enough, and at no period, notwithstanding plaintiff's demands, were the cars provided adequate to carry the cane. The plaintiff was the defendant's agent at Berard's switch to receive and send forward all the cane they were to receive at that point. The smaller planters had equal rights to use the cars for the transportation of their cane. It could or should not have been expected that plaintiff should give his own cane any preference. Had he done that, the effect of the cold that it is claimed affected his crop would have fallen on the smaller planters with whom defendants had, we presume, the same

contract relations.   Be that as it may, there is no basis on which we can hold the plaintiff could have expedited the carrying of his cane to the factory, and thus avoided the freezing weather, by any greater use of the cars intended for all.   The result of the whole testimony is, that the defendants had to receive more cane at Berard's switch than could be transported in the cars they furnished, and the inevitable result was that freezing weather came before they could complete the transportation.   If the weather unfitted the cane for use as they contend, all the crops were equally exposed, and if that of plaintiff's had escaped by preferring his cane over transporting the crops of others, others would have suffered.   We do not find he could have saved his crop by that preference, and the cars appear to have been used to the best end practicable under the circumstances.

Again, it is claimed the plaintiff should have windrowed his cane. It is in proof plaintiff consulted defendants on that point.   It seems that windrowing after freezing temperature, is not always adopted· The defendants stated plaintiff must use his own judgment, but they would not windrow their own cane.   If, as we hold, it was the defendants' obligation to transport the cane and failing in this the freezing weather occurred, which as they claimed destroyed the cane, in our opinion they can not escape liability merely because plaintiff did not employ a measure of doubtful necessity or use, and which defendants themselves in the exercise of their best judgment did not adopt for their own crop in the same locality.

We deem unimportant the contention that the cane was unfitted for use by the freezing temperature to which it was subjected.   If the obligation to transport the cane to the factory was on defendants, and the cane perished in the slow performance of that obligation, they should bear the loss.   Their refusal to receive the cane after it was frozen entitled plaintiff to sue for his damages.

The defence has been presented mainly on the contentions that defendants were not bound to furnish the cars, and if bound they complied.   To these aspects and others we have given attention.

We think defendants liable for the cane in the field of the quality required by the contract, which could have been transported if defendants had provided the cars and which had been lost to plaintiff.

We think it best to remand the case for proof of that loss.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed, and it is now ordered,

State ex rel. Hohn vs. Recorder, etc.

adjudged and decreed that this cause be remanded to the lower court for the purpose of ascertaining the plaintiff's loss as stated in this opinion and for that loss thus ascertained the plaintiff to have judgment against defendant with costs.