## No. 13,127.

Ovide Landry vs. The Adeline Sugar Factory Company, Limited.

### SYLLABUS.

1. The contract between a cane grower and sugar factory for the sale and delivery of cane at the factory failed to mention upon whom the obligation was

to provide the railway cars for the transportation of the cane, whether the cane grower was to look to the railroad, or whether the arrangement for the cars was to be made by the buyer of the cane: HELD, the omission of mention of this left it open for proof and the weight of the testimony being that the buyer undertook to look after the same, he must suffer the consequences of the failure to seasonably provide the cars.

2.   This is strengthened by the fact that it was the custom of the country in contracts of this character that sugar factories buying cane would arrange with the railway company for the cars and thereafter control their movement and destination.

APPEAL from the Twenty-Fourth Judicial District, Parish of St. Mary—*Allen, J.*

*Donelson Caffery & Son* and *J. Sully Martel* for Plaintiff, Appellee.

*Philip H. Mentz* and *Carroll & Carroll* for Defendant, Appellant.

The opinion of the court was delivered by

BLANCHARD, J.   Plaintiff is a cane grower; defendant a manufacturer of sugar from cane.   On the 8th of October, 1894, they entered into a contract by which the former undertook to deliver to the latter the product of about seventy acres of cane, say 1050 tons of 2000 pounds each, of good, sound, unfrozen cane.   The delivery was to be made over the Southern Pacific Railway at the factory, which was distant from plaintiff's cane field some fifteen or eighteen miles. The place from which the shipment was to be made was the Brerard Station, or Switch.   The delivery of the cane was to begin not earlier than October 15th and not later than October 30th at the buyer's option, and it was to be delivered at the rate of about sixteen tons per day.   Defendant agreed to pay for the cane at the rate per ton of eighty-five cents for every cent prime yellow clarified sugars might sell for on the New Orleans market, and an additional eighty-five cents per ton for every cent of bounty received on account of the manufacture of the sugar.

Under this arrangement the freight charges—fifty cents per ton—from the Brerard Switch to the factory were to be borne by the shipper.

Defendant Factory began to make sugar that year on October 20th.

A portion of plaintiff's crop of cane was delivered under the contract, but on and after January 12, 1895, the Factory shut down and refused thereafter to receive further offerings of cane.   The ground

of this refusal was that the cane at and around the Brerard Switch had become injured by freezing and was unfit for sugar making.

On or about December 24th, 1894, freezing weather had supervened, in consequence of which much cane had perished.

Whether plaintiff's cane was so injured by the cold as to make it unfit for use, under the terms of the contract, is an issue herein.

Defendant contends it was; plaintiff affirms it was not.

The fact remained that the cane grower lost the greater part of his crop of cane. So did other cane growers who, likewise, had contracted to deliver cane from the Brerard Switch to defendant factory.

Litigation followed. This suit and one by Rene F. Delahoussaye were instituted. They were consolidated and tried together. From adverse judgments by the trial court, plaintiffs appealed here.

The judgment in the Delahoussaye case was reversed and defendant held liable for the loss of the cane.

This for the reasons assigned in the opinion of the court in 50 La. Ann. 544.

The judgment in the other case (plaintiff's) was reversed and the case remanded, the court not being entirely satisfied that the evidence as to the situation with regard to the Ovide Landry contract warranted the same conclusion arrived at with respect to the Delahoussaye contract. See 50 La. Ann. 542.

The case was remanded on all the issues, but more particularly that additional testimony might be adduced on the point of defendant's obligation to provide, or see to the provision, of sufficient cars to seasonably transport the contract cane from the Brerard Switch to the factory.

Plaintiff's contention is that defendant company assumed the obligation of providing the cars for the shipment of the cane; that the company dealt with the railroad with regard to the cars; that eighteen cars were stipulated to be furnished for the accommodation of the cane shippers at Brerard; that that number of cars were supplied by the railroad, cribbed by defendant company for the carriage of cane and labeled for exclusive use at the Brerard Switch; that this would have given and was intended to give six cars a day at the Switch; but that some of these cars so intended for Brerard Switch were diverted to other points; and that because of this there was a dearth of cars at the Switch, causing a failure of the means of trans-

porting the cane to the mill and the consequent loss to plaintiff of 900 tons of cane, which he was ready and anxious to deliver, and offered to deliver, and which could have been delivered before the factory closed down had the cars been provided.

He contends further that before the freeze of December 24th came, he had windrowed his cane, and that by this timely action the cane had not been injured by the freeze and was good, sound, unfrozen cane, within the meaning of the contract, at the time the mill closed down and defendant company refused to receive further shipments of cane.

He charges negligence and fault on part of defendant and sues for the value of 900 tons of cane which he avers to be $3 per ton, or $2700.

The defence is that alone from the contract between the parties is to be deduced the obligation assumed by the company, and that no where is it stipulated cars were to be provided by defendant; that it was to the railroad plaintiff was to look for the necessary cars to transport his cane; that his obligation was to deliver the cane at the factory; that beyond cribbing the cars defendant had assumed no obligation in respect thereto; that eighteen cars had been cribbed and labeled for use at the Brerard 'Switch; and that thereafter the cars were under the control of the railroad officials and not of defendant, and the latter is not responsible for their non-delivery at the Switch.

It is denied that plaintiff's cane was not injured by the freeze, and the contention of the defendant is it was frozen and unfit for use at the time the factory closed down.

Judgment on the second trial in the District Court was in favor of plaintiff, who was decreed to recover of defendant $2,108.40.

The latter appeals.

The case turns mainly on a question of fact—the same discussed and sustained, as to the plaintiff's side of it, in the Delahoussaye case, *supra*. In view of the discussion there and the reasoning by which the court sustained the conclusion arrived at, it is deemed unnecessary to go over the ground again here.

We find from a preponderance of testimony that on defendant company was the obligation to see to it that sufficient cars (six daily) were provided at the Brerard Switch for the accommodation of its contract cane shippers there, among whom was Landry, the plaintiff.

We find, further, that defendant company did not meet its obligation fully in this regard, and to this and to the refusal to receive cane after January 12, 1895, is attributable the loss which the plaintiff has suffered.

The evidence by no means satisfies us that defendant company was warranted in refusing plaintiff's cane on and after January 12th on the ground that it was frozen and not up to the contract requirement.

On the contrary, we think it reasonably established that his cane was good. A sufficient test was made at another mill, after defendant's refusal to receive, to demonstrate this. In the Delahoussaye case, *supra*, the cane had not been windrowed and was, consequently, frozen.

Defendant's action in declining, after the freeze, to receive plaintiff's cane, which had been protected from the cold by windrowing, impresses us as arbitrary.

The conclusion arrived at, that defendant company had assumed the obligation of furnishing the necessary cars at the Brerard Switch to save the cane of its patrons there, in no way conflicts with the written contract made on the 8th of October with the plaintiff and other parties.

Nothing is said in the contract as to the furnishing of the cars—who was to do this, whether the cane growers were to look to the railroad, or whether the arrangement for the cars was to be made by the buyers of the cane. The omission of mention of this left it open for proof, and the weight of the testimony is that defendant company undertook to look after the same.

It is also proven that such was the custom of the country in contracts of this character—that the factories buying cane for sugar making purposes would arrange with the railroad for cars, crib or crate the same, and then give the orders as to where—what points— the cars should be dispatched for cane. In this sense the buyers of cane controlled the cars.

This is not militated against by the stipulation in the contract that the cane growers should deliver the cane at the factory. Yes, they were to deliver it there, but in cars that the buyers agreed to supply.

This stipulation as to delivery at the factory threw upon the sellers the onus of paying the freight charges on the cane, and this suffi-

ciently accounts for the insistence by the buyer upon the insertion of this clause in the contract.

This view is strengthened by the fact that defendant company employed an agent at the Brerard Switch, who weighed the cane as it was brought to the switch in the carts of the contractors, and saw to the loading of the same in the railway cars. The freight charges were deducted by the buyer from the price of the cane and paid by the buyer to the transportation company.

The trial court estimated plaintiff had lost the product of thirty arpents of cane and that the yield per arpent was twenty-eight tons. This is sustained by the evidence as to the number of arpents and the yield per arpent.

He figured the number of tons of cane lost at 840 and the value thereof, under the contract, at $2.51, which is correct. This gave the sum of $2,108.40 for which judgment was rendered against defendant.

But it appears from the testimony of the plaintiff that after the refusal of defendant company to receive any more cane, he disposed of eighteen tons of cane to Octave Romero, who owned and conducted a small sugar mill in the neighborhood. These eighteen tons were not lost to plaintiff, and to the extent thereof there should be a reduction of the amount awarded against defendant. The eighteen tons were worth, at $2.51 per ton, $45.18.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount thereof by the sum of forty-five dollars and eighteen cents, and that as thus amended the said judgment be and the same is affirmed, costs of appeal to be borne by plaintiff and appellee.

Monroe, J., takes no part.