The opinion of the court was delivered by
Blanchard, J.
In August, 1898, plaintiff, a grower of sugar cane, and defendant company, manufacturers of sugar from cane, entered into a contract the material portions of which were as follows:
“Said party of the second part (plaintiff), owner of cane crop now growing on Solitude Plantation, situated in the Parish of Iberia, State of Louisiana, agrees to sell and does hereby sell unto party of the first *1845 part the said cane crop, consisting of 100 acres of plant cane and 50 acres of stubble, intended for the mill.
“Said party of the second part binds himself to deliver at Lozes’ switch all said cane, which shall be sound, unfrozen cane, free from leaves, trash and dirt. The tops to be cut in the first Solid red joint below the white.
“The delivery of said cane is to start on a date to be specified by the party of the first part (defendant), but which shall be no later than the 25th day of October next and be completed no later than the 5th day of January following,- and shall be considered as made on the arrival of said cane at the sugar house scales, belonging to the party of the first part.
“The daily delivery of cane shall be determined by the party of the first part (defendant), but shall be no less than one-seventieth of the total amount contracted herein, all conditions of weather permitting.
“In consideration of which the party of the first part agrees to pay unto the party of the second part for all cane so delivered, said cane to be weighed on the scales at Segura, the sum. of 85 cents per ton of 2,000 pounds for each cent that prime yellow clarified sugar sells for during the week of delivery, first official quotations of the New Orleans Sugar Exchange to be taken each day- to make the average, which price shall constitute the price of this contract.
“The manufacture of said cane into sugar at the aforesaid sugar-house being a material consideration of this contract, it is expressly stipulated and agreed that in the event of fire, breakage of machinery or any other cause beyond the control of said party of the first part, but of such a nature as to prevent for more than six consecutive days the manufacture of said cane into sugar at the aforesaid sugarhouse, this contract to become null and void for all cane not previously delivered'at the said sugarhouse. Should, however, the mill operations be stopped but for a few days, owing to any cause, this contract to continue in full force, but the said party of the second part agrees not to hold said party of the first part in any manner responsiblle for any loss which may be incurred to the party of the second part owing to the non-reception of cane by the party of the first part during the said time of stoppage.
“Settlements to be made on every Thursday for all cane delivered up to the end of the preceding week. Freight to be deducted therefrom at 50 cents per ton.”
*1846 Plaintiff’s interpretation of this contract is that by its terms he sold to defendant his crop of sugar cane then growing on 150 acres of land cultivated by him, that the sale was complete the moment the contract was signed, that from that moment the ownership of the growing cane vested in defendant, and that, thereafter, no further obligation or responsibility rested upon him (plaintiff) except to cut the cane in season, transport it to “the switch” of the tram railway, owned by-defendant, situated on his (plaintiff’s) plantation, between the dates mentioned in the contract, and there load it into cars which defendant was to furnish.
Defendant’s interpretation is that the contract evidences nothing more than an agreement to sell and buy the growing cane crop, for future delivery, that the ownership of the crop continued in plaintiff, at whose risk the cane remained until delivered and weighed, and that the right to reject all cane not up to the contract requirement of “sound, unfrozen cane” continued in defendant up to the time of inspection at the mill.
The writing evidencing the agreement between the parties is unfortunate in that it was not drawn in such way as to express clearly and beyond cavil the intention of the signers. There are, too, conflicting declarations. In the second paragraph the obligation is put upon plaintiff to deliver the cane at the tram switch in his field, while the succeeding paragraph asselrts, in effect, the delivery is not to be considered made until the arrival of the cane at the factory.
The first paragraph of the contract, wherein it is recited that plaintiff “agrees to sell and does hereby sell’ to defendant his cane crop on 150 acres of land, standing alone would support what plaintiff contends for, viz: — a present sale and purchase and the vesting of ownership then and there in defendant. But it does not stand alone and is controlled and modified by the stipulations following.
The contract is to be viewed as a whole and the intentions of the parties are to be gathered from all the parts thereof, giving practical effect to the instrument in the way in which such contracts are ordinarily understood.
The second paragraph shows that what defendant purchased and intended to purchase was cane found to be sound and unfrozen at the time of delivery at the switch. The company was under no obligation to receive and pay for cane that was not in that condition, nor was it *1847 obliged to receive even sound cane unless the tops of the same had been “cut in the first solid, red joint below the white,” and was free from. leaves, trash and dirt.
This demonstrates that no completed transaction as to the sale and purchase of the cane took place when the contract was signed. Plaintiff was not the mere agent of defendant to cut the cane and deliver it at the switch. The cane remained his property and was at his risk and expense until delivered in the ears at the switch in the condition stipulated for in the contract.
The doubt resulting from the conflicting statements as to the place of delivery must be resolved against defendant company. The obligation plaintiff assumed in this regard was to deliver the cane at the switch. “Said party of the second part binds himself to deliver at Lozes’ switch,” etc. — is the wording of the principal clause of the contract relating to delivery.
To hold the cane was to be considered delivered only when it reached the sugarhouse is to render nugatory the clause quoted.
The cars it was to be loaded in at the switch were the cars of defendant company, running on its tram, under its control and operated by its agents. This was a delivery to the company.
It was, thereafter, the company’s business, not that of plaintiff, to haul the cars to the mill.
Plaintiff was to be charged with the freight at fifty cents a ton, it is true, but that resulted from the agreement and is not a circumstance militating' against the view that plaintiff completed his obligation as to delivery when he hauled his cane to the Switch, or stood ready to do so if the cars were forwarded. Landry vs. Adeline Sugar Factory, 52 La. Ann. 258.
This view of the nature of this contract is materially strengthened by a later clause therein which stipulates that, in the event of fire, or breaking down of the machinery, or other cause, necessitating a stoppage of the operations of the mill, the contract was to be considered no longer in force as to cane not already delivered. If the mill operations were stopped by such accidents for a few days only, the contract was to continue in force, but the cane seller was not to hold the buyer responsible for losses incurred owing to the non-reception of cane during the period of stoppage.
This militates strongly against the idea that defendant became the *1848 owner of the cane as the result of the contract signed. If it were contemplated at tire time that the company was thenceforth to be considered the owner, wherefore the stipulation about losses resulting to plaintiff during the time the mill closed down for repairs ?
Our conclusion is that the contract did not evidence; and was not intended to evidence, a present sale of the crop of cane grown by plaintiff in the sense of then and there vesting defendant with its ownership.
It is to be viewed, rather, as a contract whereby plaintiff obligated himself to sell his cane crop to defendant and to make delivery thereof to defendant, as the latter might direct, at the tram switch in plaintiff’s field, on board defendant’s cars, between the dates of October 25th and January 5th. Defendant was to receive the cane in its cars at the switch, haul the same to the mill, where it was to be weighed and plaintiff settled with for the cane as per the weights thus ascertained, at a valuation to be determined by the official quotations of the price of sugar issued by the New Orleans Sugar Exchange.
Defendant had the right to reject cane that did not come up> to the contract requirement, and where cane was sound enough to be utilized and yet not up to the contract requirement, defendant, instead of rejecting it outright, could have taken it at such a percentage of discount as it and plaintiff might have agreed on. This, it seems, was done as to some of the cars of cane received at the mill.
Not only was defendant company under obligation to receive the cane at the switch in plaintiff’s field, but was under the further obligation to have sufficient cars there in which to load the cane. If it failed in this particular, and plaintiff was ready to deliver and load into the cars and did not do so because the cars in sufficient number were not placed at the switch, -then must defendant be held liable for the loss which ensued. Delahoussaye vs. Sugar Factory, 50 La. Ann. 544; Landry vs. Sugar Factory, 52 La. Ann. 258.
The preponderance of evidence, we think, establishes that defendant did not comply fully with its obligation to furnish cars at the switch. Sufficient demand was made upon it to put it in default in this regard. Plaintiff, we find from the testimony, was ready to deliver and offered to deliver at the switch. But the ears were not provided in sufficient number.
It would have been a vain and useless thing to haul the cane to the *1849 switch unless cars were there in which to load it. Defendant can not be peniitted to assume the position that there was no delivery because the cane was not actually hauled to and dumped out at the switch. Unless ears were going- to be put there to carry it away, it were an unnecessary expense to haul the cane to the switch — an expense which defendant might have been called upon to bear.
When one party offers to perform a condition precedent, and is prevented by the other, the offer, under proper circumstances, will be treated as performance, and the conduct or omission of the other party as excusing a useless effort to perform. De La Vergne Co. vs. R. R. Co., 51 La. Ann. 1742.
Li this sense, plaintiff could well claim, as he has done in his petition, that ho delivered his cane to defendant.
He sues for a balance due him of $2,511.00 on account of cane so alleged to have been delivered, and $1,450.00 additional as, practically, damages he suffered because of defendant’s failure to perform its contract obligations.
In the view we take of the case plaintiff must be restricted tó claiming only the contract value of the cane which was not received by defendant.
The judge below came to the conclusion that 360 tons would about cover the quantity of cane- thus chargeable against defendant, and that the evidence established its contract value to have been $3.07 per ton, making a total of $1,116.00, but that from this sum should be deducted 50 cents a ton freight, which would have been the charge had the cane been hauled to the mill in defendant’s cars. Making the deduction he figured the amount due plaintiff at $936.00 and gave judgment accordingly.
Defendant appealed, and in this court, by answer to the appeal, plaintiff prays that the judgment be increased to $2,410.40.
The amount found by the District Judge, we think, does substantial justice between the parties and we are not disposed to increase the same.
An error was, however, made in deducting the 50 cents per ton freight on the 360 tons, for the reason that this freight charge is accounted for in the agreed net price of $3.07 per ton. In other words, the amount due plaintiff is the sum that the number of tons (360) *1850 multiplied by the net price ($3.07) would produce. This sum is $1,105.20.
Plaintiffs counsel say, in their brief, that subsequent to the handing down of liis opinion awarding judgment in favor of plaintiff for $936.00, the judge corrected the error and, later, signed a definitive judgment for $1,106.00
We find but one judgment in the record and that is for $936.00. Nor do we find that “$1,106.00,” as figured by counsel, is the value of 360 tons of cane at $3.07 per ton. We find that value to be $1,105.20, and to this extent, by amendment, the judgment must be increased.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be increased from nine hundred and thirty-six dollars, with legal interest from judicial demand, to one thousand, one hundred and five and 20-100 dollars, with legal interest from judicial demand, and that as thus amended the same be and is hereby affrmed at the cost of the appellant.
Rehearing refused.