BUTTE WATER CO., RESPONDENT, *v.* CITY OF BUTTE, APPELLANT.

(No. 3,321.)

(Submitted November 22, 1913. Decided January 16, 1914.)

[138 Pac. 195.]

*Contracts — Interpretation—When Permissible—Intent—Cities and Towns—Water Supply—Municipal Purposes—Practical Interpretation by Parties—Effect—Water Mains—Extension —Liability for Cost.*

Contracts—Interpretation—When not Permissible.
  1.  Where the language employed in a written contract is so clear and unambiguous that it cannot be misunderstood, it is not open to interpretation.

Contracts—Interpretation—Cities and Towns—Water Supply—Municipal Purposes.
2.   *Held,* that a contract between a city and a water company, under the provisions of one paragraph of which, to the effect that the company would at a stipulated rate per hydrant supply water "necessary for fire and general municipal purposes," the city contended for water for sprinkling and other municipal purposes without additional cost, was not so free from ambiguity as to exclude interpretation, where from language in a succeeding paragraph an inference was permissible that by it the service mentioned in the former was limited to fire hydrant service, and where under another clause the company was required to furnish water free of charge for certain enumerated purposes.

Same—Practical Interpretation by Parties—Effect.
3.   Where the parties to a contract of doubtful or ambiguous meaning have placed a practical interpretation upon it for a number of years, it is one of the best indications of their true intent.

Same—Cities and Towns—Water Mains—Extension—Liability for Expenses.
4.   Under a contract between a city and a water company providing that the latter should furnish and keep supplied with water all hydrants installed in excess of the then existing hydrants, that all such hydrants should be located as the fire marshal directed and kept in good repair by the company ready for use for fire purposes, and that the city should have the right to order the water mains extended upon any street, the city was not liable for materials and labor in setting a new hydrant and laying a water main.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by the Butte Water Company against the city of Butte. From a judgment for plaintiff, defendant appeals. Remanded, with directions to modify judgment, the judgment as so modified to stand affirmed.

*Messrs. Alexander Mackel, W. F. Davis, N. A. Rotering* and *Mr. Lowndes Maury,* of Counsel, for Appellant, submitted a brief and one replying to that of Respondent; *Mr. Mackel* and *Mr. Maury* argued the cause orally.

There can be no difference between "all general municipal purposes" and "all public purposes of the city." There is no material difference between a phrase "all general municipal purposes" and "all ordinary or customary municipal purposes." Sprinkling the streets has been held to be a public purpose of a municipality, and this is the same as a general municipal purpose. (*Maydwell* v. *City of Louisville,* 116 Ky. 885, 105 Am.

St. Rep. 245, 63 L. R. A. 655, 76 S. W. 1091; *Savage* v. *Salem,* 23 Or. 381, 37 Am. St. Rep. 688, 24 L. R. A. 787, 31 Pac. 832.) If any of these waters supplied were not for general municipal purposes, then the city was not liable to pay for them at all, because the city can use its money only in the carrying out of general municipal purposes. (McQuillin on Municipal Corporations, sec. 2165.)

We admit that where a private corporation, through its officers, makes voluntary payments under the assumption that a contract is of a different nature from its true form, then such payments cannot be recovered back, nor can they be set off to subsequently accruing debts; but the rule is not the same with reference to municipal corporations or any other public concern. The exception for which we contend is well discussed in the following cases: *Ellis* v. *Board of State Auditors,* 107 Mich. 528, 65 N. W. 577; *State* v. *Young,* 134 Iowa, 505, 13 Ann. Cas. 345, 110 N. W. 292; *Allegheny County* v. *Grier,* 179 Pa. 639, 36 Atl. 353; *State ex rel. Beck* v. *Washoe County Commrs.,* 14 Nev. 66; *Union County* v. *Hyde,* 26 Or. 24, 37 Pac. 76. And it is proper to set off such payments. (*Dew* v. *Parsons* (K. B.), 2 Barn & Ald. 562; *Commonwealth* v. *Field,* 84 Va. 26, 3 S. E. 882; *Ada County* v. *Gess,* 4 Idaho, 611, 43 Pac. 71; *Ward* v. *Town of Barnum,* 10 Colo. App. 496, 52 Pac. 412; 30 Cyc. 1301.) There is no basic cause why a man should not get back by law a payment which he has made voluntarily and which he did not, under contract or in equity or law, have to make. The entire doctrine is founded on one of expediency and policy; a doctrine that there should be repose. Nothing more can be said for the advantage of the courts holding to such a doctrine. In the instant case there is, if the court holds the city foreclosed by the voluntary payments, a breaking in on two other basic principles of justice and equity: (1) That the well-being of the state is the highest law; (2) that the city officers were not dealing with their own, but with trust funds. There can be no doubt as to the law under that contract. It could not be a mistake of law on the part of either concern. It was a mutual mistake of fact.

Where such is the case, the parties can be put in the same position in which they were without loss to either, and the rule is, that under such a situation the money can be gotten back without regard to the exception in favor of public corporations. And it is no defense, where the money is paid under a mistake of fact, to an action for its recovery that the mistake arose through the payor's negligence if such negligence caused no harm to the payee. (22 Am. & Eng. Ency. of Law, 2d ed., 624, and note.)

"Evidence to add a parol condition to a grant repugnant to its legal effect cannot be received without proving fraud." (*Beers* v. *Beers,* 22 Mich. 42.) "Parol evidence of what the parties understood and as to what they would do in pursuance of the agreement is not admissible where the agreement shows the true construction." (*Miller v. Butterfield,* 79 Cal. 62, 21 Pac. 543, 17 Morr. Min. Rep. 222; *Bryan* v. *Idaho Quartz Min. Co.,* 73 Cal. 249, 14 Pac. 859.) Proof of declarations made antecedent, coexistent or subsequent is not competent to vary the terms of a sealed instrument, and may be rejected at any time before the retirement of the jury. (*Mott* v. *Richtmyer,* 57 N. Y. 49; *Hale* v. *Handy,* 26 N. H. 206.) One of the leading cases on the subject and to the effect that subsequent conduct of the parties cannot vary the terms of a written contract is the case of *Giles* v. *Comstock,* 4 N. Y. 270, 53 Am. Dec. 374. The last case above was followed in *Taft* v. *Schwamb,* 80 Ill. 289, and was cited also to the effect that an express contract prevails over a custom to waive its provisions. See, also, *Coal Creek Min. etc. Co.* v. *Tennessee Coal etc. Co.,* 106 Tenn. 651, 62 S. W. 162, where it is held that an acceptance of a less amount than due does not waive the right to the full amount due by the terms of the agreement. The latter portion of the decision is exactly in point, if we think of water instead of money. The acceptance by the city of a less amount of water due under the contract did not waive the right to the full amount of water due by the terms of the contract. The construction which parties place upon a contract is ineffective in the absence of ambiguity. The fact that a party to a contract pays interest for three years,

which, on a proper and obvious construction of the contract he was not required to do, should have no weight in the construction of the contract. (*Garard* v. *Monongahela College,* 114 Pa. 337, 6 Atl. 701; 17 Am. & Eng. Ency. of Law, 2d ed., 25.)

*Mr. L. O. Evans* and *Mr. John E. Corette,* for Respondent, submitted a brief and one in reply to that of Appellant; *Mr. Evans* argued the cause orally.

Our position is that the contract of December 31, 1907, required the furnishing by the water company of water free for the purposes for which it has been furnished the city at all times, to-wit, for flushing the sewers and for use in the public buildings at Butte, and for no other purposes, and that the general clause found in the second paragraph is simply the usual clause found in such contracts, by which the company, a *quasi*-public corporation, agreed to furnish, during the period there provided, a general water supply for the city and its inhabitants, and to furnish water for certain municipal purposes, as therein specified, the fire-hydrant water to be paid for at the rate there specified, and the water for flushing the sewers and for the public buildings to be furnished free, as therein specifically provided. The fact that one of the parties to the contract is a municipal corporation does not in any manner change the rules to be resorted to in interpreting its meaning. (Sec. 5024, Rev. Codes; *Vincennes* v. *Citizens' Gas Light & Coke Co.,* 132 Ind. 114, 16 L. R. A. 485, 31 N. E. 573.)

To construe this contract properly and rationally, it must be taken in its entirety and effect given to every portion of it, if by so doing a reasonable result can be reached; and only by construing the general clause in question as it was intended to be construed—that is, in connection with the specific clauses therein contained—can the whole contract be construed, meaning given to every part of it, and use made of all of its language in determining the intent of the parties. (*Animas Con. Ditch Co.* v. *Smallwood,* 22 Colo. App. 476, 125 Pac. 594; Lewis' Sutherland on Statutory Construction, sec. 380.) Again, in

choosing between the different interpretations claimed for the contract, the court is required to select the one which will give to each of the parties a fair, reasonable and equitable agreement, and a result must be avoided, if possible, which would bind the parties to an arrangement which a reasonable man of ordinary intelligence and business experience would not be presumed to have entered into. (Bishop on Contracts, sec. 400; Page on Contracts, sec. 1121; Lawson on Contracts, sec. 389; *Caine* v. *Hagenbarth,* 37 Utah, 69, 106 Pac. 945; *Messer* v. *Hibernia Sav. etc. Soc.,* 149 Cal. 122, 84 Pac. 835.) Where the language of a contract leaves the meaning at all doubtful, it is customary for the court to place itself in the position of the parties who made it as nearly as can be done, by receiving evidence of the surrounding facts and circumstances, the nature of the subject matter, the relation of the parties to the contract, the object sought to be accomplished, *etc.* (Sec. 5036, Rev. Codes; Page on Contracts, sec. 1123; *State* v. *Twin Falls Canal Co.,* 21 Idaho, 410, 121 Pac. 1039.) Where the parties to a contract of doubtful or ambiguous meaning have placed upon it a practical construction, and have by their acts under it shown what they considered the contract to mean, and especially where this practical construction is shown to have been followed for a long period of years, the courts invariably follow such practical construction and hold it to be controlling. (Page on Contracts, sec. 1126; 9 Cyc., p. 588; *District of Columbia* v. *Gallagher,* 124 U. S. 505, 31 L. Ed. 526, 8 Sup. Ct. Rep. 585; *Thomas* v. *Cincinnati etc. Ry. Co.,* 81 Fed. 911; *City of Chicago* v. *Sheldon,* 9 Wall. (U. S.) 50, 19 L. Ed. 594; *Hill* v. *City of Duluth,* 57 Minn. 231, 58 N. W. 992; *St. Louis Gas Light Co.* v. *City of St. Louis,* 46 Mo. 121; *School District of South Omaha* v. *Davis,* 76 Neb. 612, 107 N. W. 842; *Board of Commissioners* v. *Gibson,* 158 Ind. 471, 63 N. E. 982.) This rule, as to the practical construction of a contract by the parties being controlling, goes even further than a case where the contract may be susceptible in its language to more than one interpretation, and is applied to cases where the practical construction is at

variance with the plain, literal language of the contract.    (*District of Columbia* v. *Gallagher, supra; Amherst Inv. Co.* v. *Meacham*, 69 Wash. 284, 124 Pac. 682.)    The question of the correct interpretation of this contract is also disposed of in favor of the plaintiff by the rule of construction recognized at common law and embodied in section 5038 of the Revised Codes.    (See *Blankenship* v. *Decker*, 34 Mont. 292, 85 Pac. 1035; *Laidlaw* v. *Marye*, 133 Cal. 170, 65 Pac. 391; *Jordan* v. *Dyer*, 34 Vt. 104, 80 Am. Dec. 668; *Snow* v. *Flannery*, 10 Iowa, 318, 77 Am. Dec. 120; *Chicago Lumber Co.* v. *Tibble's Mfg. Co.*, 80 Iowa, 369, 45 N. W. 893; *Gillet* v. *Bank of America*, 160 N. Y. 549, 55 N. E. 292; *Kendrick* v. *Mutual Benefit Life Ins. Co.*, 124 N. C. 315, 70 Am. St. Rep. 592, 32 S. E. 728; *San Jacinto Oil Co.* v. *Fort Worth L. & P. Co.*, 41 Tex. Civ. 293, 93 S. W. 173; *American Loan & T. Co.* v. *Toledo S. & S. R. Co.*, 47 Fed. 343.)

The rule of construction prescribed in section 5034, Revised Codes, that the contract is under some circumstances to be taken most strongly against the promisor, while recognized at common law, is also there always regarded as the guide to interpretation of least force of all, and only to be resorted to when all other rules of interpretation have failed.    (Lawson on Contracts, sec. 389; 2 Parsons on Contracts, 9th ed., p. 662.)

Where a municipal corporation has general power to contract for a supply of water, or for water, material or labor, and the water or other material or the labor is furnished and accepted and used, the city is liable therefor upon an implied promise, the same as any other party would be, and even where the water or material is furnished under an express contract, which is invalid, the city cannot accept the benefit and then question the executed portion of the contract and decline to pay the reasonable value of the labor or material so accepted.    (Dillon on Municipal Corporations, secs. 1538, 1539; *State* v. *City of Great Falls*, 19 Mont. 518, 49 Pac. 15; *Contra Costa Water Co.* v. *Breed*, 139 Cal. 432, 73 Pac. 189; *Higgins* v. *San Diego Water Co.*, 118 Cal. 524, 45 Pac. 824, 50 Pac. 670; *Sacramento Co.* v. *Southern Pac. Co.*, 127 Cal. 217, 59 Pac. 568, 825.)

Where a party has voluntarily, with full knowledge of the facts and without any fraud, duress or extortion, paid money to another, although no legal obligation existed to pay the same, the party paying cannot by direct action or by way of setoff or counterclaim recover back the payments. (30 Cyc. 1298.) While it is contended by counsel that this rule does not apply to a municipal corporation, in the following cases the courts have unhesitatingly applied the rule as against municipal corporations and their officers. (See *Advertiser & T. Co.* v. *City of Detroit*, 43 Mich. 116, 5 N. W. 72; *Village of Morgan Park* v. *Knopf*, 199 Ill. 444, 65 N. E. 322; *Dickey Co.* v. *Hicks*, 14 N. D. 73, 103 N. W. 423; *Schell City* v. *Rumsey Mfg. Co.*, 39 Mo. App. 264; *People* v. *Foster*, 133 Ill. 496, 23 N. E. 615; *Cox* v. *Mayor etc.*, 103 N. Y. 519, 9 N. E. 48; *Snelson* v. *State*, 16 Ind. 29; *Supervisors* v. *Briggs*, 2 Denio (N. Y.), 26.)

MR. JUSTICE SANNER delivered the opinion of the court.

The pleadings in this case unfold with progressive elaboration. In all they occupy 169 pages of the transcript, and to produce them here, to present even an abstract of their essentials, would take so much space and serve such little purpose that a bare statement of the ultimate issue must suffice.

The respondent water company (plaintiff below) recovered judgment against the appellant, city of Butte, for $11,445 made up as follows: $8,464.50, with interest, for certain fire-hydrant water furnished the city in the months of July, August, September and October, 1911, under a written contract dated December 31, 1907; $1,524.85, with interest, as the reasonable value of certain water for street sprinkling, furnished the city in July, August, September, October, November and December, 1911; and $416.40, with interest, as the reasonable value of certain water furnished the city in July, August, September, October, November and December, 1911, at its corral, crematory and crematory residence; and of labor and material furnished in setting a water meter at the crematory in July, 1911, setting two hydrants in September, 1911, and laying a certain water

main in October, 1911. Payment was resisted by the city on the grounds that all the items of charge, except that of fire-hydrant service, were the due of the city without other payment than the fire-hydrant rates under the contract of December 31, 1907, and that the charge for fire-hydrant service was more than offset by sums paid by the city under mistake of its officers to the company for sprinkling, corral and crematory water furnished after January 1, 1908, and before August 1, 1911.

The material paragraphs of the contract·in question (which we have numbered for convenient reference) are as follows:

"(2) That the party of the first part (the water company) for and in consideration of the covenants and agreements hereinafter contained, and to be kept and performed by the said party of the second part (the city), agrees that it will furnish to the said party of the second part, all hydrant and water supply necessary for fire and general municipal purposes for a period of ten years from and after January 1, 1908, and ending on the 31st day of December, 1917.

"(3) The said party of the first part further agrees that it will furnish to the said city of Butte, during the term of this contract, and keep supplied with water four hundred and fifty-two (452) fire hydrants, as the same are now placed at different points within the city of Butte, and that it will keep at all times said fire hydrants in good repair and ready for use for fire purposes for the sum of twenty-two thousand six hundred dollars ($22,600) per year, being $50 per annum for each of said hydrants.

"(4) It is further agreed upon the part of the said first party that it will furnish to the said city of Butte, and keep supplied with water all hydrants installed by said city in excess of the said four hundred and fifty-two (452) hydrants at the rate of $50 per annum for each hydrant, and that each and all of such hydrants shall be placed and located as the fire committee and fire marshal shall direct, and that the said party of the first part will at all times keep the same in good repair ready for use for fire purposes.

"(5) It is further agreed upon the part of the party of the first part that it will furnish to the said city during the term of this contract all water that shall be required by the said city for flushing the public sewers, and for the use of the public buildings in the said city free of charge, provided, however, that the said city provide outlets through which such water shall be furnished, and provided, further, that reasonable rules as to the time of sewer flushing shall be agreed upon between the city and the company, so as not to impair the efficiency of the system for fire protection. * * *

"(7) The said second party, in consideration of the agreements hereinbefore contained to be kept and performed by said first party, agrees that it will pay to said first party the sum of $50 per annum per hydrant, for the period of ten years from and after January 1, 1908, in equal monthly installments, and the further sum of $50 per annum for each hydrant which may be added under the conditions hereinafter set forth.

"(8) It is further understood and agreed by and between the parties hereto that the said second party shall have the right at any time to order the water mains of the said first party extended upon any street in any part or portion of the said city, during the term of this contract, and that whenever the said second party shall order said mains extended the said second party hereby agrees to and with the said first party to take and use of the said first party at the established rate hereinbefore mentioned, at least one fire hydrant for every city block so ordered to be laid; it being further understood and agreed that in no case shall more than three hydrants be placed for each one thousand feet of such main extensions. * * * "

1. According to the appellant, the above contract is so clear [1] that it "conveys but one idea to the mind of the child, the professional man, the ordinary business man, the entire community," *viz.,* that for the hydrant rental specified therein the water company agreed to furnish to the city "all hydrant and water supply necessary for fire and general municipal purposes for a period of ten years from and after January 1, 1908."

If this be correct—and to determine its correctness is obviously the first step in the problem before us—then the contract is not open to interpretation (*Frank* v. *Butte & Boulder M. & L. Co., ante,* p. 83, 135 Pac. 904; *Quirk* v. *Rich,* 40 Mont. 552, 107 Pac. 821; *Harris* v. *Root,* 28 Mont. 159, 72 Pac. 429), and the judgment, in part at least, must fall.

Whether a document is or is not ambiguous is a matter of impression rather than of definition. This is obviously so, because every provision may be as clear and definite as language can make it, yet the result of the whole be doubtful from lack of harmony in its various parts. The language used is to be resorted to in the first instance, but the conclusion to be reached depends, not upon the verbal clarity of the particular sentences or paragraphs, but upon the view to be taken of the contract in its entirety. (*O'Brien* v. *Miller,* 168 U. S. 287, 42 L. Ed. 469, 18 Sup. Ct. Rep. 140; Page on Contracts, sec. 1112; 9 Cyc. 579.) Recognition of this may be found in all the books upon the subject, culminating in our Code provision that "the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Rev. Codes, sec. 5030.) Can it be said, then, that, [2] taking the contract as a whole, its meaning is so clear that "he who runs may read"? We think not. Assuming that the language of paragraphs 2 and 7 clearly implies an undertaking on the part of the company to supply the city with all the water necessary for fire and for general municipal purposes in consideration of the hydrant charge, that construction cannot be applied to the contract as a whole, without ignoring the import of the paragraphs numbered 3, 4, and 5. Paragraph 3, for instance, appropriates the consideration named to the fire-hydrant service, and it is a permissible, if not a necessary, inference from the language of this paragraph that the only service agreed to be rendered for the consideration named was the fire-hydrant service; in other words, paragraph 3 may be said to limit the apparent scope of paragraph 2. (*Railton* v. *Taylor,* 20 R. I. 279, 39 L. R. A. 246, 38 Atl. 980.) Again, paragraph 5

cannot be given any meaning consistent with the idea that the hydrant charge was intended to be in payment of all water that might be supplied to the city for general municipal purposes; on the contrary, its clear implication is that at least some water within the definition of "general municipal purposes" should be free of any charge. Paragraph 5 is a material part of this contract, and it may be reasonably viewed as an incidental or additional inducement to the city for its assent; but it is rendered valueless for this purpose because there was no need to stipulate for water "free of charge" if all the water was to be paid for by the hydrant rates. If, on the other hand, paragraph 5 is an incidental provision for free water, in the nature of an inducement to the city for its assent, then the purposes for which such water should be furnished are specifically enumerated, with the necessary inference that no other water was intended to be free.

We are not unmindful of the provision of our Code that "repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract" (Rev. Codes, sec. 5041) ; but this itself is a rule of interpretation rather than of construction, and the general intent and purpose of the contract is the very matter that is put in doubt. "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract" (Rev. Codes, sec. 5037) ; and, granting that the contract before us may be construed so as to cover and include water for sprinkling, corral and crematory purposes, that it need not be so construed is apparent. In such a situation there is ambiguity within the meaning of the law which opens the contract to interpretation by the aid of evidence *aliunde,* so as to give effect to the mutual intention of the parties to it at the time it was made. (Rev. Codes, secs. 5025, 5036; *Lozes* v. *Segura Sugar Co.,* 52 La. Ann. 1844, 28 South. 249; *Pressed Steel Car Co.* v. *Eastern Ry. of Minnesota,* 121 Fed. 609, 57 C. C. A. 635; *Uinta Tunnel etc. Co.* v. *Ajax Gold Min. Co.,* 141 Fed. 563, 73 C. C. A. 35.)

2. The reply alleges in effect that the contract in question was a continuation or renewal of relations which had existed since January, 1893, under successive contracts of the same general character, and containing substantially the same provisions as the one at bar, and that it was formulated and entered into with the understanding and in view of the construction which both parties alike had attached to these prior contracts; that these contracts had never been understood by either the company or the city to require the furnishing of any work, labor or material whatsoever, or any water free of charge except for flushing sewers and for use in the public buildings of the city, but were all understood, construed and acted upon by both the company and the city so as to leave subject to independent arrangement the furnishing of water for sprinkling, corral and crematory purposes and the furnishing of labor and material of the character set forth in the complaint; that during such period separate and independent arrangements did in fact exist, under which the company furnished, and the city voluntarily paid for, all such labor and material and all the water used for sprinkling, corral and crematory purposes; and that from June 1, 1908, up to and including the month of June, 1911, the contract at bar was by both the city and the company understood and acted upon to similar effect. Doubt may be entertained whether the conduct of the parties under the prior contracts could aid in the interpretation of the contract at bar, since they were completed and past transactions; but, in view of the similarity of language employed, it does not seem unreasonable to say that, in the absence of an indication to the contrary, the meaning the parties put upon the language used in the prior contracts was the meaning they attached to it when they used it in the present contract. In any event, the evidence, which is both documentary and oral, establishes without contradiction that the parties did put a common practical interpretation not only upon the prior contracts but also the one at bar for the first three and one-half years of its existence; and the manner in which they interpreted it sustains the conclusion that the intention of the parties when it was made

was to provide for a supply of water for fire protection to be paid for as stipulated, to furnish free water for flushing sewers and for the public buildings, and that water required for other purposes was not deemed within the purview of the contract. It [3] is an ancient and elementary rule that, where parties to a contract of doubtful or ambiguous meaning have placed a practical interpretation upon it, said interpretation is one of the best indications of their true intent. (*Uinta Tunnel etc. Co.* v. *Ajax Gold Min. Co., supra; Thomas* v. *Cincinnati, N. O. & T. P. Ry. Co.* (C. C.), 81 Fed. 911; *Chicago* v. *Sheldon,* 9 Wall. (U. S.) 50, 19 L. Ed. 594; *City of Vincennes* v. *Citizens' Gas Light & Coke Co.,* 132 Ind. 114, 16 L. R. A. 485, 31 N. E. 573; *Hill* v. *City of Duluth,* 57 Minn. 231, 58 N. W. 992; *Animas Con. Ditch Co.* v. *Smallwood,* 22 Colo. App. 476, 125 Pac. 594.) Hence error cannot be imputed to the trial court in so far as the findings and judgment at bar effectuate the intent thus established.

3. But the contract is not subject to interpretation by the parties or by anyone else concerning any matter upon which it clearly speaks. We think this principle was infringed in the [4] award to the respondent of the whole of its fifth cause of action. Included in this cause of action are certain items, to-wit: "Material and labor furnished in setting two-inch hydrant on corner of Montana and Granite streets, of the reasonable value of $71; material and labor furnished in setting hydrant at corner Broadway and Granite streets, of the reasonable value of $58.29; material and labor furnished in laying two-inch water main on Oregon avenue, 225 feet north of Gallatin street, to south side of Irvine street, of the reasonable value of $128.60." As we construe the contract, it is clear, unambiguous and not subject to interpretation touching the duty of the company to furnish fire hydrants and install water mains. In our judgment, paragraphs 4 and 8 clearly impose this duty upon the company. That these items were not of that character or were incurred in aid of purposes not covered by the contract we find nothing in the record to show. We must therefore assume them to have been within the duty imposed upon the company by paragraphs 4 and 8 of the contract,

and no recovery can be had. The total amount, including interest, represented by these items is $282, and the judgment should be reduced accordingly.

The cause is remanded to the district court, with directions to correct the judgment as above suggested; the judgment when so corrected to stand affirmed.

MR. JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.