[No. 37384. Department One. February 11, 1965.]

OCCIDENTAL LIFE INSURANCE COMPANY, *Respondent*, v. JOHN E. BLUME *et al.*, *Appellants*, NUGENT LAPOMA *et al.*, *Defendants*, LOCAL 174, I.B.T., *et al.*, *Respondents.**

*Preston, Thorgrimson, Horowitz, Starin & Ellis*, for appellants.

*Reported in 399 P. (2d) 76.

*MacDonald, Hoague & Bayless, Grosscup, Ambler, Miller & Lawrence, Wilbur J. Lawrence, Pendleton Miller,* and *Alec Bayless,* for respondents Nugent LaPoma et al.

HUNTER, J.—This appeal involves conflicting claims to an insurance refund paid into court by the plaintiff in interpleader, Occidental Life Insurance Company of California (hereafter referred to as Occidental).

Claimants are the trustees of Washington Teamsters Welfare Trust (hereafter referred to as Washington Trust, and Washington Trustees) and trustees of Puget Sound and Inland Empire Teamsters Health and Welfare Plan (hereafter referred to as Puget Trust, and Puget Trustees). The two groups made conflicting claims to a $163,513 experience rating refund Occidental had determined and was prepared to pay Washington Trustees, in accord with the terms of Washington Trust's group policy with Occidental. Puget Trustees demanded approximately one-third of the refund as their "pro rata share." The Washington Trustees then claimed the entire refund. In August, 1960, Occidental interpleaded the two claimants as defendants and paid the refund into court in order to determine the relative rights of the parties to the fund.

To see, clearly, the relationship between the two rival trusts requires a brief sketch of their background. In early 1958, there existed 15 small health-and-welfare trusts established by the employers and local unions affiliated with the Western Conference of Teamsters. The purpose of each was to provide health-and-welfare benefits for employees and their dependents. Each employer contributed a fixed amount per employee each month to one of the 15 trusts in accord with the collective bargaining agreement to which the employer was a party.

On April 29, 1958, the 15 small trusts were consolidated into the Washington Trust for economy reasons. The Washington Trust's board of trustees comprised equal numbers of representatives of labor and management, as had the governing boards of each of the smaller trusts. The Washington Trustees cancelled the life insurance policies that

had been issued to the 15 small trusts, all of which were with plaintiff Occidental, and in their place received the group policy here in question. It was effective 6 months, July 1, 1958, to December 31, 1958, and covered all the beneficiaries under the Washington Trust. The Washington Trustees were the named policy holders. The policy provided for an experience rating refund to be distributed to the holder to the extent, if any, that the premiums exceeded the aggregate of claims and costs. The Washington Trust instrument included an express provision that in the event such a refund were paid that it should be disbursed pursuant to the terms of the trust in the trustees' discretion.

There were some 30,000 employee beneficiaries of Washington Trust during the period covered by the policy in question. In November of 1958, some 9,500 of that number, and their representative employers, led by local unions which opposed those in control of Washington Trust, voluntarily withdrew from Washington Trust and formed a new health-and-welfare trust, Puget Trust. However, the employers of the 9,500 who withdrew from Washington Trust continued to pay in the required contributions to Washington Trust through December 31, 1958, the end of the Occidental policy period. On January 1, 1959, payments into Puget Trust began under new collective bargaining agreements entered into between "locals" representing the 9,500 employees who withdrew from Washington Trust and their employers. Washington Trust took out a group policy with another company, and, effective January 1, 1959, its beneficiaries no longer were covered by an Occidental policy. Both trusts continue in existence today.

After both claimants had served and filed their answers to Occidental's complaint in interpleader, the Washington Trustees moved for summary judgment in their behalf on grounds that: (1) under the policy terms the money was payable to them; and (2) under the terms of the trust, to which the employees who withdrew had been parties, it had been agreed that the Washington Trustees should disburse the funds pursuant to the terms of the trust, and therefore, the employees who withdrew had no right or

power to interfere since they were subject to the terms and conditions of the Washington Trust agreement during the time the refund was earned.

The unions and employers representing the employees who withdrew from the Washington Trust, and the employees themselves, intervened. The basis of the claim of the employee intervenors was that they were entitled to their pro rata share of the experience rating refund, since it was earned during a period in which they were beneficiaries of the Washington Trust, even though it was not paid until after they had voluntarily withdrawn. It was not until July 19, 1959, that Occidental determined to make the refund and was prepared to pay it.

The trial court granted summary judgment in which it directed that the remaining funds on deposit (the parties having previously stipulated that $100,000 should be released to the Washington Trustees) should also be distributed to the Washington Trustees. As part of that judgment, it impressed the entire $163,513, and issues and profits therefrom, with a trust which required the Washington Trustees to use it for the benefit of all those who were beneficiaries of the Washington Trust during the 6-month policy period in which the refund was earned, including employee intervenors. This, in effect, constituted summary judgment for the employee intervenors.

The trial court also discharged plaintiff Occidental from liability, dismissed the claim of Puget Trustees and impressed the employee intervenors' "share" of the funds which went to Washington Trustees with a lien for attorney fees due the attorneys for employee intervenors. The amount of such attorney fees was to be fixed by the court after the Washington Trustees determined the amount of benefits due and method of conferring such benefits on employee intervenors.

The Washington Trustees appeal. No appeal was taken by the Puget Trustees from the dismissal of their claim.

Appellant trustees contend the trial court erred in impressing the trust and thereby substituting its judgment

for theirs, when discretion had been vested in them by the trust agreement.

■ There was no provision in the Washington Trust agreement expressly giving the trustees discretion to determine the effect of employee intervenors' voluntary withdrawal from the trust on their right to share in a subsequently paid experience rating refund. But that such power was vested in them by the trust instrument may be implied, both from the specific powers conferred upon the trustees in relation to the experience rating refund, and the broad powers otherwise conferred upon them, in the trust instrument. *Monroe v. Winn,* 16 Wn. (2d) 497, 508, 133 P. (2d) 952 (1943); *Old Nat. Bank & Union Trust Co. v. Hughes,* 16 Wn. (2d) 584, 134 P. (2d) 63 (1943); 54 Am. Jur., Trusts § 289.

The Washington Trust instrument provided that experience rating refunds were to be used ". . . for the general purposes of this trust *as the Trustees in their discretion shall determine.*" (Italics ours.) Art. III, § 4(3). Other powers conferred upon the Washington Trustees in the trust instrument included power of amendment, power to construe the provisions of the trust and, in Art. V, § 1(f), to "Do all acts whether or not expressly authorized herein which the Trustees may deem necessary or proper for the protection of the Trust Fund . . ." Art. VIII, § 5 provided: "Any questions arising in connection with the performance of the provisions of this Washington Teamsters Welfare Trust not hereto specifically provided for shall be left to the sole discretion of the Trustees." We are satisfied the Washington Trustees had the implied power under the trust agreement to exercise their discretion in regard to the effect of the employee intervenors' withdrawal on their right to share in the refund.

■ Though there was no direct evidence that the Washington Trustees had exercised their discretion by formal resolution in accord with the trust agreement, the record shows that they had determined to exclude the employee intervenors from any portion of the refund, and the trial court proceeded on that basis. The Washington Trustees, in

their briefs, and in oral argument, reaffirmed this. Such a determination is subject to control by the court only when necessary to prevent an abuse of discretion. *Peoples Nat. Bank of Washington in Seattle v. Jarvis*, 58 Wn. (2d) 627, 630, 364 P. (2d) 436 (1961); *Monroe v. Winn, supra*; *Old Nat. Bank & Union Trust Co. v. Hughes, supra*; Bogert, Trusts and Trustees (2d ed.) § 560; Restatement, Trusts § 187; 90 C.J.S., Trusts § 246(c).

The question is whether the Washington Trustees' determination to exclude employee intervenors from any share of the refund constituted an abuse of discretion which justified the trial court in invoking its inherent equity jurisdiction to manage trusts, thereby substituting its judgment for that of the trustees, in whom discretion was vested in the trust agreement. We think not.

■ The record is devoid of evidence of fraud, malice, bad faith or arbitrary conduct on the trustees' part which would call for equity's intervention. Rather, the trustees' determination appears well within the bounds of reasonable judgment. It is fully consistent with the purpose and intent of the trust instrument.

Appellant cites *Judge v. Kortenhaus*, 79 N. J. Super. 574, 192 A. (2d) 320 (1963), a New Jersey superior court case (Chancery Division), which involved a trust agreement that was in all material aspects similar to the agreement in the instant case, and which is analogous on the facts. In the *Judge* case, 810 employees had transferred from Teamsters Local 478 to a new local, Teamsters Local 408. Of that number, 760 had transferred voluntarily; 50 had been transferred involuntarily by the International Union. Employers of the 810 employees thereafter, on October 1, 1960, discontinued contributions to the Local 478 fund, and, in accord with new collective bargaining agreements with Local 408, began making contributions in the employees' behalf to the newly instituted Local 408 welfare fund.

The 810 employees who withdrew subsequently made demand upon the Local 478 trustees for their pro rata share of an $8,300 reserve which existed in the fund at the time of their withdrawal, and that portion of a $59,166.19 ex-

perience rating refund from a group policy which had been earned, but not calculated or paid into the fund, at the time of their withdrawal. The Local 478 trustees refused the demand and suit was brought in behalf of the employees.

█ The New Jersey court held that discretion had been vested in the defendant trustees, that there were no countervailing equities in favor of the withdrawing members, and that the trustees did not abuse their discretion when they refused the members' demands. To determine whether the trustees had abused their discretion the court weighed their action against the trust agreement's intent and purpose, which it described as follows:

" . . . it is clear and the court finds that the trust agreement in question was intended to confer benefits upon a fluid and changing group which comprehended such of the present and future employees of the employers having contracts with Local 478 as were employed at a given time, and such other persons as were permitted by the trustees to participate and were so employed. As a beneficiary of the trust, the interest of each member of the group was an equitable one only. *Nicoletti* [*sic*] *v. Essenfeld, supra* (171 N.Y.S. 2d at *p.* 376). Its extent did not depend upon the amount of an employee's contribution to the fund or the length of his service. Each new employee-participant became possessed of an interest in the fund which was equal to that of the oldest participant. To this extent the agreement exemplified the spirit of trade unionism as expressed in *Del Veccio v. Hood,* 4 *N.J. Super.* 254, 258 (*App. Div.* 1949), to that effect that:

" 'A union works for the benefit of the group; not the group as constituted when the charter is granted or the contract is made with the employer, or at some other particular date; but the group of those who are members at any time, an ever changing group. *The man who ceases to be a member, loses all title to the assets of the union and loses all benefits of membership while the member elected today comes into all the benefits and advantages that others have won in years gone by.*' " (Italics ours.)

The same reasoning applies to the instant case.

The two principal cases upon which employee intervenors rely are *Nicolette v. Essenfeld,* 11 Misc. (2d) 197, 171 N. Y. S. (2d) 373 (1958) and *Whelan v. O'Rourke,* 170

N. Y. S. (2d) 284, 5 App. Div. (2d) 156 (1958). In each, transfer of pro rata shares to employees who withdrew was upheld. The factual situations in the two cases are similar to that in the *Judge* case, but are distinguishable in one singularly significant feature: the manner in which the employees were transferred. In the *Nicolette* and *Whelan* cases the employees were *involuntarily* transferred from one local union to another. In the *Judge* case 760 employees transferred *voluntarily* to Teamsters' Local 408 (the remaining 50 employees were transferred involuntarily, but were denied recovery because of equitable considerations not present here nor in the *Nicolette or Whelan* cases).

In *Nicolette* it was made clear that the fact the transfer was involuntary, rather than voluntary, led to the result. The New York court said:

"The gross injustice which would be suffered by the Dairy Employees if the Produce Employees, who constitute the sole present membership of Local 202, were to be held entitled to retain the entire reserve for themselves, is apparent. Plaintiffs would in such event, reap an unintended windfall based on a transfer of membership over which the Dairy Employees had no control. . . .

*"Cases, such as those cited by plaintiffs, which deal with the loss, by resigning members of an association, of all interest in the assets of the association, are inapplicable to the case at bar.*

" . . . under the circumstances of this case, forfeiture by them of that interest would be patently unjust." (Italics ours.)

The court in the *Judge* case stated that it was empowered to afford such relief as that prayed for in an "appropriate case" where unjust enrichment would result at the expense of the transferred employees, but that since this was a voluntary withdrawal no such countervailing equity arose. It stated:

"*Nicoletti* [*sic*], however, would appear to be readily distinguishable from the present case. Basically, it involved the *involuntary* transfer of employees from one local union to another by reason of the mandate of the International Union. . . ." (Italics ours.)

Countervailing equities were present in the *Nicolette* and *Whelan* cases which were not present in the *Judge* case and which are not present in the instant case.

We believe the disposition by the New Jersey court in the *Judge* case is consistent with both the *Nicolette* and *Whelan* cases. We consider the reasoning of the *Judge* case sound and, on the basis thereof, determinative of this appeal.

The Washington Trustees' determination to exclude the employee intervenors from the experience rating refund, under the facts of this case, was an exercise of discretion not subject to the court's inherent power to manage trusts. The trial court therefore erred in impressing the funds with a trust in behalf of employee intervenors. It follows that the lien impressed by the trial court for attorney fees in behalf of the employee intervenors also was improper.

We need not discuss the other issues raised, in view of our disposition of this appeal.

In fairness to the trial court, it should be stated it did not have the benefit of the reasoning in the *Judge* case in that the case had not been decided at the time of the argument to the trial court on the summary judgment and was not brought to its attention at the time judgment was entered.

Those portions of the trial court's judgment which awarded the interpleaded funds to the Washington Trustees, dismissed the claim of the Puget Trustees, and absolved plaintiff Occidental from liability are affirmed. The judgment is otherwise reversed.

The appellants will recover their costs on this appeal.

ROSELLINI, C. J., HILL, OTT, and HALE, JJ., concur.

May 25, 1965. Petition for rehearing denied.