[No. 43960. En Banc. April 1, 1976.]

CHARLOTTE S. WITHERSPOON, *as Executrix, Respondent*, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *Appellant.*

*Lukins, Annis, Bastine, McKay & Van Marter, P.S., Eugene I. Annis, Lee M. Barns,* and *Robert G. Beaumier,* for appellant.

*Witherspoon, Kelley, Davenport & Toole,* by *William D. Symmes,* for respondent.

HOROWITZ, J.—Defendant insurer appeals a summary judgment permitting recovery on the insured's medical expense insurance policy of hospital and medical expenses paid under the Medicare provisions of the Social Security Act, notwithstanding the policy's exclusionary and deductible clauses. The correct construction of these clauses is the only issue on this appeal. We affirm.

Defendant St. Paul Fire and Marine Insurance Company issued a so-called "Top-Brass Supplement—Personal Catastrophe Liability" policy to the insured, William W. Witherspoon, on September 1, 1971. Mr. Witherspoon was then only 2 months away from his 65th birthday, when he would become eligible for Medicare benefits. Defendant knew this. While the policy was in effect and the insured was eligible for Medicare benefits, he was hospitalized and incurred hospital and medical expenses in the sum of $22,215.19.

After a Medicare adjustment, the final bill was $21,610.10. Of this amount, Medicare paid the sum of $18,775.52, leaving a balance of $2,834.58 unpaid. Without waiver of rights, defendant paid $2,267.74 of this remaining· amount—approximately 80 percent—which defendant contends fulfilled its obligations under the insurance policy.

The medical expense portion of the policy states the insurer will pay 80 percent of the amount by which "Eligible Expenses" exceed the "Deductible Amount," up to a maximum of $25,000. The "Deductible Amount" is defined in the policy as the greater of $10,000 or the amount of benefits provided for "Eligible Expenses under Other Medical Expense Coverage."

The insurer maintained below, first, the insured's expenses paid for by Medicare are included within the policy's "Deductible Amount" as "Other Medical Expense Coverage," and alternatively that those same expenses are not "Eligible Expenses" as defined in the policy.

Plaintiff (the insured's executrix) contended the minimum deductible of $10,000 applied, and that the insurer was therefore liable for 80 percent of $11,610.10 (total expenses less $10,000), or $9,288.08. Since defendant had tendered $2,267.74, plaintiff maintained she was still due $7,020.24. The trial court agreed and entered summary judgment for this amount. This appeal followed.

We first consider insurer's basic contention that the Medicare benefits are includable within the policy's "Deductible Amount" as "Other Medical Expense Coverage."

The "Deductible Amount" is defined in the policy as follows:

> The Deductible Amount shall be the greater of:
> (a) the Minimum Deductible shown in the Declaration [$10,000] or
> (b) the amount of benefits provided for Eligible Expenses under Other Medical Expense Coverage as defined herein.

The definition of "Other Medical Expense Coverage" states:

"Other Medical Expense Coverage" means coverage provided for hospital, surgical or other medical expenses by any other. insurance or welfare plan or prepayment arrangement (including Blue Cross and Blue Shield plans), whether provided on an individual or family basis or on a group basis through an employer, union or membership in an association . . .

It is undisputed that the $10,000 minimum deductible from the "Eligible Expenses" payable under the policy is available to the insurer. The insurer contends a greater amount is deductible—the Medicare benefits of $18,775.52 —as "Other Medical Expense Coverage." The insurer argues Medicare is clearly "any other insurance or welfare plan or prepayment arrangement (including Blue Cross and Blue Shield plans), whether provided on an individual or family basis or on a group basis through an employer, union or membership in an association."

To determine whether the "Other Medical Expense Coverage" limitation applies to expenses paid by Medicare, we must first decide whether Medicare constitutes "any other insurance or welfare plan or prepayment arrangement." The Medicare benefits in question were paid from both Part A and Part B Medicare. It is important to note the significant differences in the nature and administration of Parts A and B.

[T]he Medicare program is a dual structure comprising two separate insurance programs, distinct as to benefits, coverage, financing, and administration. Part A, hospital and related benefits, is incorporated within the existing social security patterns. Contributions are universal and mandatory. After a transitional period . . . eligibility will be a right only for persons 65 and over who meet the conditions required for cash social security benefits.

Part B, the supplementary medical benefits plan, is voluntary and open to any person aged 65 or over (except nonresident aliens) irrespective of social security status. Premiums are paid on a current basis. Benefit payments under the two plans are made by different administrative "intermediaries" (called "carriers" under Part B).

H. Somers & A. Somers, *Medicare and the Hospitals—Issues and Prospects* 19-20 (1967); *see* Department of Health, Education & Welfare, Pub. No. SSA 74-10050, *Your Medicare Handbook* 44-45 (1974).

 May either Part A or Part B Medicare be classified as "insurance"? The essence of insurance, as that term is commonly understood, is "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." RCW 48.01.040; *see In re Estate of Knight*, 31 Wn.2d 813, 816, 199 P.2d 89 (1948). Part A Medicare, therefore, is not "insurance." Part A benefits (hospitalization) are not obtained by beneficiaries who voluntarily enter into a contract with the federal government. Part A benefits are paid as a result of mandatory payroll or self-employment taxes to those persons 65 and over who meet the conditions for Social Security benefits. Thus it has been administratively determined that amounts paid as self-employment taxes under Int. Rev. Code § 1401(b) and as employee taxes under Int. Rev. Code § 3101(b) (taxes used to finance Part A), do not qualify as amounts paid for insurance for purposes of the medical expense deduction under Int. Rev. Code § 213. Rev. Rul. 216, 1966-2 Cum. Bull. 100. In addition, Rev. Rul. 341, 1970-2 Cum. Bull. 31, characterizes Part A Medicare in this manner:

> [T]he basic medicare benefits [Part A] paid to (or on behalf of) an individual are in the nature of disbursements made in furtherance of the social welfare objectives of the Federal government.

*See Imvris v. Michigan Millers Mut. Ins. Co.*, 39 Mich. App. 406, 198 N.W.2d 36 (1972); *Jones v. Aetna Cas. & Sur. Co.*, 497 S.W.2d 809 (Mo. App. 1973).

It might be argued, however, that Part B Medicare is "insurance," if the latter term is construed by itself unmodified by language we later discuss. Thus, Part B (supplementary medical) is available to all persons age 65 and over, and is financed through monthly premiums of a uniform amount, paid only by those who voluntarily enroll in the program and through matching contributions from the

federal government. Thus, Part B does have a "contract" aspect not present in Part A. Also, unlike Part A which is financed in part by Social Security payroll and self-employment taxes, Part B has no built-in welfare effect favoring those in lower income groups. Part B requires a uniform monthly payment from each enrollee. In addition, Part B premiums qualify as amounts paid for insurance covering medical care, and are deductible as medical expenses under Int. Rev. Code § 213(a). Rev. Rul. 216, *supra.* In addition, Rev. Rul. 341, *supra,* holds that benefits received under Part B "are in the nature of medical insurance proceeds" and are therefore excluded from gross income under Int. Rev. Code § 104(a), which excludes amounts received through accident and health insurance for personal injuries or sickness. We shortly point out, however, that it would be improper to treat the term "insurance" as used in the deduction clause as if it stood alone.

Neither Part A nor Part B Medicare constitute a "welfare plan." This phrase is not defined in the policy. The term "welfare" is commonly understood to refer to benefits of a gratuitous nature, as "public relief for the poor as provided under relief or welfare acts." *Ballentine's Law Dictionary* 1365 (3d ed. 1969). Inasmuch as the beneficiaries of Medicare pay for this coverage through Social Security taxes and Part B premiums, Medicare cannot be classified as "welfare" as that term is understood in modern usage.

> For the amount paid on his hospital bill by the Social Security Administration, it may be presumed that plaintiff paid his share of the social security taxes which partially finance Part A of Medicare, and it was stipulated that he paid $3.00 per month for Part B coverage. Medicare is not a free or charitable program under which a governmental agency provides hospitalization services or expenses "without cost" to aged citizens.

*Black v. American Bankers Ins. Co.,* 478 S.W.2d 434, 439 (Tex. 1972). Alternatively, the term "welfare plan" might have been intended to refer to labor union health and welfare plans authorized by 29 U.S.C. § 186(c) (1970), and

illustrated by the health and welfare plan which was the subject of *Occidental Life Ins. Co. v. Blume*, 65 Wn.2d 643, 399 P.2d 76 (1965). If this was the intended meaning, it would not encompass Medicare.

Nor is Medicare a "prepayment arrangement (including Blue Cross and Blue Shield plans)." Again, this term is not defined in the policy. It may refer to plans which differ from Medicare in two significant respects. First, "prepayment" contracts differ from Medicare in the size of the risks they cover:

> A contract which covers *only* small budgetable costs and no potentially large losses might be said to be a prepayment contract rather than an insurance contract . . .

O. Dickerson, *Health Insurance* 326 (3d ed. 1968). Medicare, with its extensive use of deductibles, *see* 42 U.S.C. § 1395(a) (1970), appears directed to providing coverage for large hospital and medical expenses not within the ability of elderly persons to meet by any other means. Secondly, "prepayment arrangements" or "plans" provide for benefits in medical or hospital *services* rather than in *cash*. M. Levy, *A Handbook of Personal Insurance Terminology* 424, 496 (1968). This is the case, for example, with Blue Cross plans:

> *Blue Cross* is a system of providing hospital service and care as opposed to paying reimbursement or indemnity benefits to an insured.

Levy, *supra* at 66. Part B Medicare, however, may pay cash benefits directly to the insured:

> There are two ways payments are made under Medicare's medical insurance. The medical insurance payment can be made to the doctor or supplier. This payment method is called assignment. Or, the medical insurance payment can be made to you.

*Your Medicare Handbook, supra* at 23. Thus, Medicare is either not a "prepayment arrangement" or it is unclear whether Medicare is such an arrangement.

In determining whether the "Other Medical Expense

Coverage" exclusion applies to the benefits in question, we are left only with the question of its applicability to Part B benefits, since we have concluded that Part A is not "insurance" and Parts A and B are neither a "welfare plan" nor a "prepayment arrangement."

■ We find in the definition of "Other Medical Expense Coverage" that the word "insurance" (as well as "welfare plan" and "prepayment arrangement") is modified by the following language:

> whether provided on an individual or family basis or on a group basis through an employer, union or membership in an association . . .

This is consistent with the grammatical rule that a comma separating a modifying clause from the clause immediately preceding is an indication that the modifying clause is intended to modify all the preceding clauses and not only the last antecedent one. *T.I. McCormack Trucking Co. v. United States*, 251 F. Supp. 526, 533 (D. N.J. 1966); *Service Inv. Co. v. Dorst*, 232 Wis. 574, 288 N.W. 169, 134 A.L.R. 539 (1939). The word "whether" also serves to make clearer the fact that this phrase restricts the kinds of "insurance," "welfare plan," and "prepayment arrangement," since it may be defined to mean "either." *Webster's Third New International Dictionary* 2603 (1971).

■ If Part B Medicare is "group" insurance, then it is not within the deduction because it is not provided "through an employer, union or membership in an association." The purpose of "group" insurance is to provide uniform benefits for individuals within a defined group:

> *Group insurance* contracts are contracts made with an employer or other entity to cover a defined named or recorded group of individuals identifiable by reference to their relationship to the entity. . . . Premiums may be paid entirely by the employer or other entity, partly by the covered persons, or by the covered persons alone. Eligible groups are limited by state law in some states and by the underwriting criteria of insurers. These limitations and underwriting criteria are applied to the group as a whole and are concerned with the size of group,

proportion enrolling, and nature and purpose of the group.

O. Dickerson, *supra* at 114; *see* 1 J. Appleman, *Insurance Law & Practice* § 41 (1965).

An "individual" policy, on the other hand, is generally tailored to the particular actuarial characteristics of the individual concerned:

> *Individual contracts* are contracts made with an individual to cover him and, in certain instances, specified members of his family, usually dependents. The underwriting standards are applied to the individuals concerned, but some contracts are issued with little or no underwriting.

O. Dickerson, *supra* at 116. Part B Medicare would clearly fall within the category of "group" insurance rather than "individual" or "family" insurance. For a current uniform monthly payment of $6.70 (Medical Services Adm'n, U.S. Dep't of H.E.W., Pub. No. (SRS) 75-24902 *Medicaid—Medicare, Which is Which?* 18 (1975)), each enrollee receives exactly the same medical insurance benefits. 42 U.S.C. §§ 1395j-m (1970). Thus, Part B Medicare is "group" insurance, and not within the deduction of "Other Medical Expense Coverage."

In addition, even if Medicare is construed to be a "welfare plan" or "prepayment arrangement," the above rationale would still keep it outside the terms of the deduction. Medicare would still be provided on a "group" basis, but not "through an employer, union or membership in an association."

The cases cited in appellant's brief to support insurer's interpretation of the "Other Medical Expense Coverage" deduction do not require a result different from that here reached.

■ Accordingly, the "Deductible Amount" will not be construed to include Medicare, in view of the rule requiring ambiguities in deduction clauses to be construed in favor of the insured. *Thompson v. Ezzell*, 61 Wn.2d 685, 688, 379 P.2d 983 (1963).

We next consider the insurer's alternate contention that expenses paid by Medicare comes within the terms of an exclusion for "[a]ny charges paid for or reimbursable by or through any national, state, or local government."

In construing a policy of insurance, the court seeks to determine the intent of the parties, expressed in the contract, and generally will give the language used its popular and ordinary meaning. *Safeco Ins. Co. of America v. McManemy*, 72 Wn.2d 211, 432 P.2d 537 (1967); *Christensen v. Sterling Ins. Co.*, 46 Wn.2d 713, 284 P.2d 287 (1955). Thus, the language of an insurance policy has been interpreted in accordance with the way it would be understood by the ordinary man buying insurance, "even though a different meaning may have been intended by the insurer." *Ames v. Baker*, 68 Wn.2d 713, 716-17, 415 P.2d 74 (1966). It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 517 P.2d 966 (1974). This rule applies with added force in the case of exceptions and limitations to the policy's coverage. *Thompson v. Ezzell, supra.*

We first note that if, as the insurer vigorously contends, the insurer intended the deductible clause to permit expenses paid by Medicare to be deductible, it would have been unnecessary to also provide, by general language making no specific reference to Medicare, that all expenses paid by Medicare should be excluded from policy coverage. The fact that it was unnecessary arguably suggests there was no such intention. The absence of such intention finds support in the fact that, as next appears, the exclusionary clause is inapplicable to Part A Medicare expenses.

The exclusionary clause encompasses "[a]ny charges" paid for or reimbursable by a governmental body. The nature of Part A Medicare, at the very minimum, makes it doubtful whether expenses paid by Part A would be included within this exclusion. For a hospital to be eligible to receive payment for hospital services rendered in the Medicare program (Part A), the hospital must agree "not to

charge . . . any individual" for covered services. 42 U.S.C. § 1395cc(a)(1)(A) (1970). Indeed, if the hospital does charge the individual, it must make adequate provision for return of any moneys improperly collected. 42 U.S.C. § 1395cc(a)(1)(C). In considering the effect of these statutory provisions, the court in *Steffen v. Pacific Mut. Life Ins. Co.*, 442 S.W.2d 142, 145 (Mo. App. 1969), stated:

> It is our conclusion that plaintiff could not have been compelled to pay St. Joseph Hospital for the hospital services rendered Paul B. Steffen which is the subject matter of this litigation. St. Joseph Hospital by its agreement with the government agreed not to charge any individual for said services. The agreement further provides that should the hospital incorrectly collect from an insured or other person for said services it would refund same. This agreement is in accord with 42 U.S.C.A. § 1395cc. Paul B. Steffen was a third party beneficiary of this agreement and in our view neither he nor his personal representative could be required to pay for said services. Defendant is therefore not liable under its policy for said services.

The likelihood of such doubts as to a Medicare exclusion is increased when we consider the policy's medical expense coverage clause. It reads:

> If a Covered Person incurs Eligible Expenses as defined therein resulting:
>
> . . .
> (b) from a sickness or disease contracted and commencing while this Benefit is in force (herein called "such sickness"); subject to the applicable provisions of this Supplement and all the terms, exclusions and limitations of this Part, the Company will pay 80% of the amount by which Eligible Expenses incurred during a benefit period for a Covered Person exceed the Deductible Amount, subject to the Maximum Benefit for any one injury or any one injury or any one sickness . . .

On the one hand, the coverage clause states "Eligible Expenses" are subject to all "exclusions." We can assume some insureds might therefore conclude Medicare benefits are within the exclusion for "[a]ny charges paid for or reimbursable by or through any national, state or

local government," and thus *are not* within recoverable "Eligible Expenses." However, the coverage clause also states the insurer will pay 80 percent of the amount by which the "Eligible Expenses" exceed the "Deductible Amount." Elsewhere in the policy the "Deductible Amount" is defined as including "benefits provided for Eligible Expenses under Other Medical Expense Coverage." Since it is at least unclear whether Medicare is or is not within the definition of "Other Medical Expense Coverage," the same insureds might conclude Medicare benefits *are* part of the "Eligible Expenses." The coverage clause therefore becomes unclear as to its treatment of Medicare expenses. If, in determining the coverage provided by the policy, "the intention of the parties thereto is to be gathered from the whole instrument," (*Hollingsworth v. Robe Lumber Co.*, 182 Wash. 74, 79, 45 P.2d 614 (1935)), even a possible lack of ambiguity in one of the policy's exclusions may not prevent the overall policy coverage from being ambiguous with respect to Medicare:

> Whether a document is or is not ambiguous is a matter of impression rather than of definition. This is obviously so, because every provision may be as clear and definite as language can make it, yet the result of the whole [may] be doubtful from lack of harmony in its various parts.

*Butte Water Co. v. Butte*, 48 Mont. 386, 396, 138 P. 195 (1914). *Cf.* R. Dickerson, *The Interpretation and Application of Statutes* 103-36 (1975).

█ Moreover, public policy considerations reinforce the need for specific mention of Medicare in the exclusionary clause if the insurer intended all Medicare expenses to be excluded.

The average man lacks the training and knowledge of those who draft insurance policy language and complex statutes such as Medicare. The development of the program of providing payment for hospital and medical expenses covered by the single word "Medicare" seemingly suggests a unique, unitary system of benefits rather than two sys-

tems of benefits known to at least the better informed as Part A and Part B Medicare. If the exclusionary clause is so unclear as to permit an interpretation that part of Medicare is excluded, questions may arise whether the exclusionary clause is applicable to any part of Medicare. In the case of Medicare, considering its overwhelming importance to the population of the country, including its working and retired population, it is especially important that exclusionary language be written in such clear fashion that the average man will know the extent of the insurance coverage he is purchasing.

We do not hold that policy exclusions may not be expressed in general terms if sufficient to inform the average person of the scope of the insurance contract. This is another instance, however, where, "[a]s a matter of public policy, limitations such as the [defendant] contends exist in the instant case must be clear and spelled out with specificity." *Glen Falls Ins. Co. v. Vietzke*, 82 Wn.2d 122, 126-27, 508 P.2d 608 (1973). Given the enormous and pervasive effect of Medicare upon American health care and the American health insurance industry, an average person in applying for health insurance and reading the language of this exclusion would not clearly understand whether it was intended to exclude Medicare expenses. *See Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 991, 472 P.2d 611 (1970). We base our conclusion on the following facts.

The instant policy was issued to the insured on September 1, 1971. By 1968, approximately 18.6 million elderly persons were covered by both Parts A and B of Medicare, O. Dickerson, *supra* at 360, and today that number has grown to approximately 23 million. *Medicaid—Medicare, Which is Which, supra* at 20. The size and scope of the federal government's Medicare and companion Medicaid programs have made it "the largest health insurer in the United States." *American Medical Ass'n v. Weinberger*, 395 F. Supp. 515, 518 (N.D. Ill. 1975).

Enactment of Medicare on July 30, 1965, was well known to all health insurers.

The 1965 Amendments to the Social Security Acts had a profound impact on the insurers which write health insurance. The normal evolution in policy changes became a revolution during late 1965 and early 1966.

O. Dickerson, *supra* at 360. Duplication of Medicare benefits was one of the main problems addressed by insurance industry studies undertaken at that time (O. Dickerson, *supra* at 361), and by the end of 1966, nearly 5 million persons were covered by private contracts designed to supplement Medicare benefits. O. Dickerson, *supra* at 243. *See also* Weeks, *The Effect of Medicare on Retiree Health Insurance, The Conference Board Record* 13 (1967).

The insurer, if a Medicare exclusion was intended, who presumptively must have been well aware of the extraordinary role Medicare was playing in the field of health care and of the understandable need of a substantial part of the population for coverage provided in health insurance policies could have easily excluded Medicare by name and thus removed any uncertainty as to the intended reach of the exclusionary clause.[1] The insurer here was familiar with this technique because in its deduction clause it referred by name to "Blue Cross and Blue Shield plans."

The average man, however, should not be required to speculate on the meaning of insurance provisions in order to determine the nature and extent of the benefits provided

[1]In *Bybee v. John Hancock Mut. Life Ins. Co.*, 507 S.W.2d 330, 331 (Tex. Civ. App. 1974), the court held the following provision (added to a hospitalization policy in 1968), unambiguously excluded Medicare benefits:

"The benefits payable under this coverage for expenses incurred by a subject person . . . shall be the excess, if any, of (a) the benefits determined without regard to this amendment, over (b) the amount of benefits provided for the same expenses under full Medicare coverage."

(Italics omitted.)

by his insurance policy. The relevant deduction and exclusion clauses should be construed in favor of the insured.

Affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.